[No. 19545-3-II. Division Two. March 7, 1997.]

HOBART KURTIS WILLIAMS, *Appellant*, v. THE DEPARTMENT OF LICENSING, *Respondent.*[†]

---

[†]This opinion was reported in the advance sheets of the Washington Appellate Reports as THE STATE OF WASHINGTON, *Respondent*, v. HOBART KURTIS WILLIAMS, *Appellant*.

*Anna K. Woods* and *Stouffer & Knight*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Lilia Lopez, Assistant*, for respondent.

BRIDGEWATER, J. — Hobart Williams appeals the revocation of his Washington driver's license. We affirm.

Williams was stopped at the gate of McChord Air Force Base in a routine check of every vehicle for the proper identification for entry. After stopping Williams, the sentry at the gate noted the smell of alcohol on Williams's breath and called for an Air Force security officer. Officer Perry, upon arriving at the gate, asked Williams to step

out of his car. Officer Perry observed that Williams had difficulty walking, slurred speech, and bloodshot eyes. Officer Perry administered several field sobriety tests, all of which Williams failed. Officer Perry placed Williams under arrest.

Officer Perry asked Williams to submit to a breathalyzer test, advising him that he had the right to refuse and informing him of the consequences of such a refusal under both federal and Washington law. Williams refused to take the breath test. Pursuant to federal regulation, Officer Perry executed a sworn report of William's failure to submit to the breathalyzer test and sent the report to the Washington State Department of Licensing. The Department revoked Williams's Washington driver's license. Williams appealed the Department's decision, and a de novo trial was held in Pierce County Superior Court on March 16, 1995. The trial judge affirmed the Department's decision.

## I

■ Williams contends that the federal security officer who stopped him was not a "law enforcement officer" or "arresting officer" within the contemplation of the implied consent statute, and thus the Department of Licensing did not establish jurisdiction for its revocation of his driver's license. The Department of Licensing has authority under prior RCW 46.20.308(6) (LAWS OF 1983, ch. 165, effective January 1, 1986)[1] to revoke a licensee's driving privilege upon receipt of a sworn report of a law enforcement officer stating that after valid warnings the licensee refused to take a breathalyzer test. This section has been interpreted to mean that the sworn report of a law enforcement officer is a jurisdictional prerequisite to the Department's administrative authority to revoke a licensee's

[1]The current law, RCW 46.20.308, effective September 1, 1995, took effect after Williams's arrest in 1992. The law's revision does not affect the term at issue here, but the numbering of the subsections of the law were changed. References herein match the numbering of the earlier version.

driving privilege. *Waid v. Department of Licensing*, 43 Wn. App. 32, 36, 714 P.2d 681 (1986); *Kaye v. Department of Licensing*, 34 Wn. App. 132, 133, 659 P.2d 548 (1983).

■■ The terms "law enforcement officer" and "arresting officer" are not defined in RCW 46.20 or in the general definitions of RCW Title 46. The term "law enforcement officer," given its plain meaning, includes any officer empowered to enforce the law. If the implied consent statute were intended to be restricted to Washington law enforcement officers, it would say so. In addition, it was Officer Perry's uncontroverted testimony that he was empowered to enforce Washington traffic laws and had the power to arrest. Officer Perry was trained by the Washington State Patrol to operate the BAC Verifier DataMaster and used the Washington rights and warnings form to inform Williams of his rights. Officer Perry did in fact arrest Williams. Thus, Officer Perry fits within the plain meaning of "law enforcement officer." Williams's attempt to use the definition of "peace officer" in RCW 10.93 to define "law enforcement officer" is inappropriate and not helpful because neither statute references the other and the terms are not identical. Officer Perry was a "law enforcement officer" for purposes of RCW 46.20.308.

II

■■ Williams argues that McChord Air Force Base is not "within this state" for purposes of the implied consent statute because it is federal property. Military bases remain a part of the state in which they are located. *DuPont-Fort Lewis Sch. Dist. v. Clover Park Sch. Dist.*, 65 Wn.2d 342, 350, 396 P.2d 979 (1964) (citing *Howard v. Commissioners of the Sinking Fund of Louisville*, 344 U.S. 624, 73 S. Ct. 465, 97 L. Ed. 617 (1953)). The state loses jurisdiction to regulate within federal property only where state and federal law conflict. *Id.* In this case, there is no

conflict of laws and McChord Air Force Base is "within this state" for purposes of the implied consent statute.

## III

■ Williams contends that Washington's revocation of his driver's license is double jeopardy because he was already punished in federal court. The Double Jeopardy Clause prevents both successive punishments and successive prosecutions for the same offense. *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 2139, 135 L. Ed. 2d 549 (1996). However, "the suspension or revocation of a driver's license is not penal in nature and is not intended as punishment, but is designed solely for the protection of the public in the use of the highways." *State v. Scheffel*, 82 Wn.2d 872, 879, 514 P.2d 1052 (1973). Williams argues that this case is called into question by the line of civil forfeiture cases. However, Williams relies on cases overruled by *Ursery*, 116 S. Ct. 2135. Forfeiture of a driver's license is not punishment under the Double Jeopardy Clause, and thus double jeopardy has no application to this case.

## IV

Williams contends that the "initial detention" at the entrance gate to McChord is an unconstitutional seizure, both under state and federal constitutions. It appears that Williams is alleging that both the stop at the military gate and Officer Perry's detention violated the constitution.

### WASHINGTON CONSTITUTION

Article I, section 7 of the Washington Constitution protects against warrantless searches and seizures.[2] *State v. Simpson*, 95 Wn.2d 170, 178, 622 P.2d 1199 (1980). This

---

[2]"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7.

state recognizes the privacy interest of individuals and objects in automobiles traveling on the public highway. *City of Seattle v. Mesiani*, 110 Wn.2d 454, 457, 755 P.2d 775 (1988). The state Supreme Court has held that sobriety checkpoints are seizures under article I, section 7, and are constitutional only where the search is justified under one of the existing warrant exceptions. *Id.* This checkpoint was not, however, a sobriety checkpoint.

■ A person's expectation of privacy at a military base is different from the expectation while traveling on a public highway. For example, a base commander has the power to exclude all civilians from the base for any reason. *See Greer v. Spock*, 424 U.S. 828, 96 S. Ct. 1211, 1217, 47 L. Ed. 2d 505 (1976). Thus, a person seeking to enter a military base should expect that an inspection at least of his identification will be forthcoming. In addition, the decision to submit oneself to the gate checkpoint is purely voluntary and knowing, which differs from a checkpoint on a public highway. Therefore, a checkpoint, such as this one, which was set up for the limited purpose of checking the identification of every person seeking admittance, does not intrude upon an individual's privacy interest in the way that a sobriety checkpoint on a public highway does.

## UNITED STATES CONSTITUTION

■ Generally, a seizure occurs within the meaning of the Fourth Amendment when a vehicle is stopped at a checkpoint. *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S. Ct. 2481, 2485, 110 L. Ed. 2d 412 (1990); *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S. Ct. 3074, 3082, 49 L. Ed. 2d 1116 (1976). However, the Fourth Amendment prohibits only unreasonable seizures. *Sitz*, 110 S. Ct. at 2485. The court must engage in a three-part balancing test to determine the reasonableness of a seizure at a systematic vehicle checkpoint, weighing (1) the government's interest in the checkpoint program, (2) the extent to which the checkpoint advances this goal, and (3)

the amount of intrusion upon the individual motorist. *Sitz*, 110 S. Ct. at 2484-85, 2487.

In this case, the military gate checkpoint meets the test for a reasonable stop. This checkpoint was set up to check all identifications of those individuals seeking entry. The purpose was to preserve base security. This is an important interest that is clearly advanced by a checkpoint for authorized access. The intrusion upon the individual motorist is minimal because every motorist is stopped, allowing the gatekeeper no discretion, and the duration of the stop and extent of the search are very limited. *See Sitz*, 110 S. Ct. at 2486. Thus, the interest in stopping vehicles at the gate outweighs the limited intrusion upon the motorists stopped there and the checkpoint does not violate the Fourth Amendment.

## V

Williams also argues that Officer Perry did not have sufficient grounds to detain him for investigation of his intoxication. An officer must have " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *City of Seattle v. Yeager*, 67 Wn. App. 41, 46, 834 P.2d 73 (1992) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)), *review denied*, 121 Wn.2d 1027 (1993). "Articulable suspicion is a substantial possibility that criminal conduct has occurred or is about to occur." *Id.* The smell of alcohol on a driver's breath is a specific fact that raises a substantial possibility that the driver is in violation of drunk driving laws. Officer Perry did not violate constitutional protections when he detained Williams at the gate based only on the gatekeeper's statement that Williams smelled of alcohol.

## VI

Williams contends it was error for the court to admit the guard's statement because this was inadmis-

sible hearsay. The guard's statement was not hearsay. The only statement by the gate guard related by Officer Perry was that Williams had smelled of alcohol. The significance of this information is that it gives Officer Perry a basis for detaining Williams for further investigation of his intoxication.[3] Thus, the statement was not offered for the truth of the matter asserted and was not hearsay, and the trial court did not err in permitting it.

## VII

Williams argues for the first time on appeal that because the federal officer informed him of the consequences of refusal to submit to a breathalyzer test under both federal law, loss of base driving privileges for one year, and state law, revocation of the Washington driver's license, the officer sent a confusing message that precluded Williams from making a knowing and intelligent decision. "The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). We will not address this claim.

We affirm.

HOUGHTON, C.J., and SEINFELD, J., concur.

Reconsideration denied April 21, 1997.

---

[3]The trial court stated that the purpose of this testimony was to establish probable cause. However, "an appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court." *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986). The fact that Williams smelled of alcohol when stopped may indeed be a part of the showing of probable cause, but its primary significance is that it gives Officer Perry a reason to believe Williams might be intoxicated and to proceed with sobriety tests.