36 P.3d 1080 (2001)
109 Wash.App. 558
STATE of Washington, Respondent,
v.
Kathryn M. HOPKINS, Appellant.
No. 46244-0-I.
Court of Appeals of Washington, Division 1.
December 24, 2001.
As Amended on Reconsideration in Part February 1, 2002.
*1081 John Flowers, Everett, for Appellant.
Allyson Zebra, King County Courthouse, Seattle, for Respondent.
BECKER, A.C.J.
Under former RCW 46.61.5055(1), a person convicted for the first time of driving while under the influence must "be punished" by a driver's license suspension or revocation of either 90 days or one year, depending on the person's alcohol concentration. Because the length of the revocation increases upon a finding that the level is 0.15 or greater, that finding is for the jury to make. In this case the sentence included a one-year revocation, based on a finding made by the judge. The sentence must be reversed.
On January 25, 1999, a Washington State Patrol officer arrested Kathryn Hopkins on suspicion of driving under the influence. She failed field sobriety tests. A breath alcohol test produced two readings averaging .157.
*1082 The State charged Hopkins with the crime of driving a motor vehicle with a breath alcohol content of .08 or greater, contrary to RCW 46.61.502 and .506. Hopkins, age 31, had no record of prior offenses. If convicted, she faced varying penalties depending on her alcohol concentration, according to the statutory penalty schedule in effect at the time she committed the offense.[1] The threshold for conviction was a finding that her alcohol concentration was at least .08. That finding would bring with it imprisonment of at least one day; a fine of at least $350; and driver's license suspension of 90 days. A finding that Hopkins' alcohol concentration was at least 0.15 would increase the minimum jail time and fine to two days and $500, and increase the mandatory license revocation to one year.[2] Hopkins offered to plead guilty to an alcohol level between .08 and 0.15, but the State refused. Because of the greater penalties involved where the alcohol measurement is 0.15 or greater, Hopkins elected to proceed to a jury trial.
At trial, Hopkins attempted to introduce expert testimony showing the margin of error of the Datamaster breath testing machine to be 10 percent. Such a margin of error would mean that Hopkins' actual alcohol level could have been as high as .172 or as low as .141. The trial court excluded this testimony after deciding that the issue of whether the alcohol concentration was at least 0.15 was for the judge to decide at sentencing, not for the jury. Hopkins proposed jury instructions and a special interrogatory that would have allowed the jury to determine whether or not her alcohol measurement was below 0.15. The court refused these submissions, and instead instructed the jury in such a manner as to require a guilty verdict if they found her alcohol concentration was at least .08.
The jury convicted Hopkins. At sentencing, the trial judge considered the testimony about the Datamaster's margin of error. But, persuaded that the particular machine used in Hopkins' case was extremely accurate, the judge determined by a preponderance of the evidence that Hopkins' alcohol concentration was at least 0.15.
The judge entered a form "Order of Judgment and Sentence for the Crime of: Driving Under the Influence", and checked a box for ".15 or >" instead of the box for ".08-.14". The sentence imposed one year in jail, with all but two days suspended; and a $5,000 fine, with all but $925 suspended. The judge checked a box marked "Other", and wrote, "Revocation of license for one year."[3]
Hopkins appealed to the superior court, contending that the issue of over or under 0.15 should have been submitted to the jury. The superior court concluded that the judge properly determined the issue because it was relevant only to sentencing. This court granted Hopkins' motion for discretionary review.[4]
Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); State v. Gore, 143 Wash.2d 288, 312, 21 P.3d 262 (2001). Hopkins contends her sentence is invalid under Apprendi.
Apprendi applies to any situation in which a sentencing factor, other than a prior conviction, *1083 will increase the defendant's sentence beyond the statutory maximum for the crime. In Apprendi, the trial judge accepted the defendant's plea of guilty to charges based on his shooting into the home of an African-American family that had recently moved into an all-white neighborhood. The judge found by a preponderance of the evidence that the crime was motivated by racial bias, and was therefore subject to enhancement under a separate hate crime law. The enhanced sentence imposed was 12 years for a second-degree offense that would have ordinarily carried a maximum 10-year term of imprisonment. The Supreme Court found the procedure to be a violation of due process, and also "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." Apprendi, 530 U.S. at 497, 120 S.Ct. 2348.
The State argues that this case is governed not by Apprendi, but rather by McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). Apprendi distinguished but did not overrule the holding of McMillan: Facts that increase a defendant's sentence are properly found by a judge, so long as the resulting sentence is not "more severe than the statutory maximum for the offense established by the jury's verdict...." See Apprendi, 530 U.S. at 487, n. 13, 120 S.Ct. 2348. In McMillan, the court upheld a statute that required the sentencing judge to impose a mandatory minimum penalty of five years imprisonment if the defendant visibly possessed a firearm in the course of committing a specified felony. The mandatory minimum "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty". McMillan, 477 U.S. at 87-88, 106 S.Ct. 2411. The statute "operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." McMillan, 477 U.S. at 88, 106 S.Ct. 2411.
In this case, the trial court sentenced Hopkins under former RCW 46.61.5055(1), the penalty schedule for the crime of driving under the influence. If jail time and fines were the only penalties involved in this statutory scheme, there would be no Apprendi issue. This is because the statutory maximum penalty of one year in jail and a $5,000 fine remain unchanged regardless of a defendant's alcohol concentration; only the minimums vary. But in addition to facing jail time and fines, a defendant convicted of driving under the influence also faces a mandatory loss of driving privileges, and the period increases from 90 days to one year if the person's alcohol concentration is at least 0.15:
(1) A person who is convicted of a violation of RCW 46.61.502 or 46.61.504 and who has no prior offense within seven years shall be punished as follows:

(a) In the case of a person whose alcohol concentration was less than 0.15, or for whom for reasons other than the person's refusal to take a test offered pursuant to RCW 46.20.308 there is no test result indicating the person's alcohol concentration:
(i) By imprisonment for not less than one day nor more than one year.... and
(ii) By a fine of not less than three hundred fifty dollars nor more than five thousand dollars.... and
(iii) By suspension of the offender's license or permit to drive, or suspension of any nonresident privilege to drive, for a period of ninety days: The period of license, permit, or privilege suspension may not be suspended. The court shall notify the department of licensing of the conviction, and upon receiving notification of the conviction the department shall suspend the offender's license, permit, or privilege; or
(b) In the case of a person whose alcohol concentration was at least 0.15, or for whom by reason of the person's refusal to take a test offered pursuant to RCW 46.20.308 there is no test result indicating the person's alcohol concentration:
(i) By imprisonment for not less than two days nor more than one year.... and
(ii) By a fine of not less than five hundred dollars nor more than five thousand dollars.... and
*1084 (iii) By revocation of the offender's license or permit to drive, or suspension of any nonresident privilege to drive, for a period of one year. The period of license, permit, or privilege suspension may not be suspended. The court shall notify the department of licensing of the conviction, and upon receiving notification of the conviction the department shall suspend the offender's license, permit, or privilege ...
Former RCW 46.61.5055 (emphasis added). The question is whether the increase in the maximum length of the license suspension is an increase in the maximum penalty for the crime for purposes of Apprendi.
The State argues that the revocation of Hopkins' license does not trigger an Apprendi analysis because revocation is a civil penalty. Whether a particular statutorily defined penalty is civil or criminal is largely a matter of statutory construction. United States v. Ward, 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980); Winchester v. Stein, 135 Wash.2d 835, 846, 959 P.2d 1077 (1998). Where a statute is plain and unambiguous, the court's inquiry must end, for a statute's meaning must be derived from the wording of the statute itself. State v. Von Thiele, 47 Wash.App. 558, 562, 736 P.2d 297 (1987); Enterprise Leasing, Inc. v. City of Tacoma, 139 Wash.2d 546, 552, 988 P.2d 961 (1999).
The statute in question, former RCW 46.61.5055(1), lists license revocation along with jail time and a fine after the words "shall be punished as follows". We find this to be a plain and unambiguous statement that license revocation, as accomplished under this statute, is intended as a criminal penalty.
A recent amendment to RCW 46.61.5055, effective July 25, 1999, has changed the statute so that the license suspension provisions no longer follow the words, "shall be punished as follows". See RCW 46.61.5055(1). Instead, the provisions for license suspension are found in a separate subsection. See RCW 46.61.5055(6). The State asks us to regard the amendment as a clarification, indicating that the license revocation provisions in the former statute were not intended to be penal in nature. See, e.g., State v. Hendricks, 103 Wash.App. 728, 14 P.3d 811 (2000) (where an original enactment was ambiguous and a clarifying amendment contravenes no judicial construction of the original statute, the amendment may be deemed curative, remedial, and applied retroactively). But because the language of the former statute ("shall be punished as follows") is unambiguous, there is nothing to clarify.
The State contends that it is inconsistent with precedent to characterize license revocation as a criminal penalty. A long line of Washington cases holds that revocation of a driver's license is a remedial civil sanction, designed solely for the protection of the public in the use of highways. The State particularly cites State v. McClendon, 131 Wash.2d 853, 868, 935 P.2d 1334 (1997); State v. Scheffel, 82 Wash.2d 872, 879, 514 P.2d 1052 (1973), appeal dismissed, 416 U.S. 964, 94 S.Ct. 1984, 40 L.Ed.2d 554 (1974); State v. Williams, 85 Wash.App. 271, 277, 932 P.2d 665 (1997). As the court observed in McClendon, "administrative licensing proceedings in this state have long been considered remedial, and not punitive." McClendon, 131 Wash.2d at 868, 935 P.2d 1334.
In McClendon, the State had initiated two distinct proceedings against the driver as the result of a breath test registering above the threshold for drunk driving. First, the Department of Licensing imposed a five-year requirement to drive with a probationary license. This was followed by a criminal proceeding on a citation charging the driver with a violation of RCW 46.61.502. The lower court concluded that both actions led to punishment and accordingly dismissed the criminal charge as a violation of double jeopardy. The Supreme Court reversed. "We conclude that administrative issuance of probationary licenses is not punishment under the double jeopardy clause." McClendon, 131 Wash.2d at 869, 935 P.2d 1334. See also Williams, 85 Wash.App. at 275, 932 P.2d 665 (Department of Licensing revocation of driver's license pursuant to implied consent statute, RCW 46.20.308, was not penal in nature *1085 and therefore did not violate double jeopardy where driver had already been punished in federal court). In Scheffel, the license revocation proceeding occurred in superior court, under a former version of the habitual traffic offenders act, RCW 46.65. But the only factual determination called for was whether the defendant had previously been convicted of three specified offenses, and the sole purpose of the proceeding was to revoke the defendant's license. Scheffel, 82 Wash.2d at 877-879, 514 P.2d 1052. The Supreme Court held that the license revocation that occurred in this proceeding was not penal in nature, and did not constitute multiple punishment for the three underlying offenses.
These cases show only that license revocation is a civil sanction when it is imposed as the result of an administrative proceeding, or as the result of a proceeding undertaken for the sole purpose of restricting a person's privilege to drive. They do not hold that license revocation is inherently a civil sanction.
The State argues that a license revocation, when imposed as part of a sentence for a conviction of driving under the influence, is actually an administrative sanction. This is so, the State argues, because the statute directs the court to notify the Department of Licensing of the conviction. The Department then suspends the offender's license. Former RCW 46.61.5055(1)(a)(iii) and (1)(b)(iii). But as is apparent from the judgment entered in this case, the trial judgenot the Departmentdecides that the license should be revoked. That the Department carries out the decision does not alter the punitive character of the sanction.
License revocation is an administrative sanction when imposed by the Department under the implied consent statute. The Department revokes the driver's license upon receiving the arresting officer's sworn report about the results of the breath test. RCW 46.20.308(6)(e). The driver's recourse is an administrative hearing. See RCW 46.20.308(7), (8), and (9). See also RCW 46.20.3101 (prescribing length of revocations imposed by the Department). But the administrative proceeding under RCW 46.20.308 is separate and distinct from the criminal prosecution arising from the same arrest. Each proceeding can lead to license revocation.[5] It is thus possible for an offender such as Hopkins to have her license revoked twice as the result of the same breath test. Precedent requires only that the administrative revocation be regarded as a civil penalty.
Because of the statute's unambiguous language ("shall be punished as follows"), we conclude that a license revocation imposed as part of a sentence under former RCW 46.61.5055 is a penalty for the crime of driving under the influence.
The State also argues that the statute does not prescribe a maximum period of license revocation. The Ninth Circuit, following Apprendi, has rejected a similar argument advanced by the government in United States v. Nordby, 225 F.3d 1053 (9th Cir.2000).
The investigation in that case showed Nordby to be a participant in a marijuana growing operation in Humboldt County, California. The State charged him with conspiracy to possess and manufacture marijuana with intent to distribute it, in violation of 21 U.S.C. 841. That statute defines the offense in subsection(a) by making it unlawful to possess and manufacture marijuana with intent to distribute. The trial court, in accordance with circuit precedent holding that Congress did not intend drug quantity to be an element of the crime, instructed the jury that it need not determine the exact amount of marijuana attributable to Nordby's conduct. The government was required only to prove "a measurable or detectable amount" beyond a reasonable doubt. Nordby, 225 F.3d at 1056.
*1086 The statute governing Nordby's case sets forth penalties in subsection (b). If the violation involves 1,000 or more marijuana plants, the maximum penalty is life imprisonment. 21 U.S.C. 841(b)(1)(A)(vii). But if the number involved is 50 plants or less, the maximum penalty is only 5 years. 21 U.S.C. 841(b)(1)(D). At sentencing, Nordby hotly disputed the government's attempt to attribute more than 1,000 plants to him. The court, however, found by a preponderance that he was responsible for 1,000 plants or more, and sentenced him to the mandatory minimum of ten years. The Court of Appeals, following Apprendi, reversed and in doing so overruled its own prior precedent. "We reject the argument that section 841 contains no `prescribed statutory maximum', and that therefore Apprendi does not apply to Nordby's case. Apprendi makes clear that the `prescribed statutory maximum' refers simply to the punishment to which the defendant is exposed solely under the facts found by the jury." Nordby, 225 F.3d at 1059. The court found that "the only sentence under Section 841 justifiable under the facts as found by the jury would be a sentence (and possible fine) of not more than five years applicable to possession of less than 50 marijuana plants." Nordby, 225 F.3d at 1059.
Following the reasoning in Nordby, we hold that the statute applied in this case does prescribe a statutory maximum penalty. For a convicted defendant with no prior offenses and an alcohol concentration below 0.15, a license revocation of 90 days is the prescribed statutory maximum. The only pertinent fact found by the jury was that Hopkins' alcohol concentration was at least .08. Thus, the only license revocation justifiable under the facts found by the jury was for a period of 90 days. The statute progresses up to a mandatory revocation period of four years for a three-time offender who has an alcohol concentration of 0.15 or greater. The progressively longer license revocation periods have the effect of defining different degrees of the crime of driving under the influence.
The State further argues that we should be hesitant to find Apprendi triggered in this case because our Supreme Court underscored the narrowness of the Apprendi holding in State v. Gore, 143 Wash.2d 288, 311-15, 21 P.3d 262 (2001). In Gore, a jury convicted the defendant of first degree rape. The trial court imposed a sentence that was within the statutory maximum, but greater than the presumptive sentence range established for first degree rape by legislative sentencing guidelines. As required by the Sentencing Reform Act, the trial court supported the exceptional sentence with findings of fact showing Gore's crime to be "more egregious than typical" for a first degree rape. See State v. Jacobson, 92 Wash.App. 958, 965, 965 P.2d 1140 (1998). The Supreme Court held that "the factual determinations that support exceptional sentences upward fall within the McMillan type of case and not the Apprendi type." Gore, 143 Wash.2d at 314, 21 P.3d 262. Facts supporting an exceptional sentence "neither increase the maximum sentence nor define a separate offense calling for a separate penalty." Gore, 143 Wash.2d at 314, 21 P.3d 262. Such facts do not have to be submitted to a jury or proved beyond a reasonable doubt. Gore, 143 Wash.2d at 315, 21 P.3d 262.
Here, the fact that the defendant's alcohol level was .015 or over defined a separate offense. As was the case in Nordby, it increased the penalty above the statutory maximum justified by the jury's findings. Thus, Gore identifies no limitation on Apprendi's holding that is relevant here.
To repeat the essential holding of Apprendi: other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. The relevant inquiry "is one not of form, but of effectdoes the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Apprendi, 530 U.S. at 494, 120 S.Ct. 2348. The jury's verdict in this case, based on a finding of an alcohol concentration of at least .08, authorized a license revocation of only 90 days. It *1087 took an additional finding that her alcohol concentration was 0.15 or above to expose Hopkins to a license revocation of one year. That critical factual issue should have been submitted to the jury. See Apprendi, 530 U.S. at 477, 120 S.Ct. 2348. Because it was not, including a one-year license revocation in Hopkins' sentence was error.
The remedy requested by Hopkins is reduction of the license revocation period to 90 days. We agree this is appropriate relief. See, e.g., State v. Tang, 77 Wash.App. 644, 650-51, 893 P.2d 646, review denied, 127 Wash.2d 1017, 904 P.2d 299 (1995); State v. May, 68 Wash.App. 491, 498, n. 6, 843 P.2d 1102 (1993).
Reversed and remanded for resentencing.
COX, J., concurs.
GROSSE, J., dissents.
GROSSE, J. (dissenting).
Under Apprendi v. New Jersey,[1] only those facts that increase the statutory maximum sentence must be determined by the trier of fact. The fact of a blood alcohol concentration of .15 or above does not increase the statutory maximum penalty for driving while under the influence of intoxicating liquor. License suspension is a consequence of conviction, but is not a part of a defendant's sentence. And even if it were, former RCW 46.61.5055 set forth the minimum length of license suspension, not the maximum. Apprendi is therefore not applicable.
The majority is incorrect in asserting that former RCW 46.61.5055 prescribed the maximum period of license suspension. Rather, this statute set forth the minimum period that the Department of Licensing would suspend an offender's license upon conviction of driving while under the influence of intoxicating liquor or drugs. For example, the Department of Licensing will suspend the license of an offender, with no prior convictions for driving while under the influence of alcohol, with an alcohol concentration of less than .15 for at least 90 days. The actual length of the suspension will vary depending on the conduct of the offender. Under RCW 46.20.311, the suspension will remain in effect until and unless the offender provides and maintains proof of financial responsibility. Additionally, the Department of Licensing will not reinstate one's privilege to drive who has been convicted of driving while under the influence of alcohol until that person obtains an alcohol evaluation and follows up with alcohol treatment as required under RCW 46.61.5056. RCW 46.61.5055 sets forth the minimum, rather than maximum, period of license suspension. Therefore, even if a license suspension were a part of an offender's sentence (which it is not), we should be guided not by Apprendi, but by McMillan v. Pennsylvania[2] under which facts that increase the mandatory minimum need not be presented to the jury for determination.
The majority's analysis reflects a basic misunderstanding of license suspensions. As is clear from former RCW 46.61.5055(1)(b)(iii), it is not the court, but rather the Department of Licensing that suspends an offender's license to drive.[3] It is true that in this case the trial court took the somewhat unusual step of noting the one-year license suspension on the judgment and sentence. But upon receiving notice that Hopkins was convicted of a first offense of driving while under the influence of alcohol with a breath test result of .15 or greater, the Department of Licensing would have suspended Hopkins' license for at least one year even if the court had made no such notation.
Further, a close examination of Hopkins' judgment and sentence reveals that the license suspension was not included as a part *1088 of the trial court's sentence. Rather, the judgment and sentence indicates that Hopkins was sentenced to 365 days in jail with 363 days suspended, and a $5000 fine with $4075 suspended. The judgment and sentence then goes on to indicate that the remainder of the jail time and fine were to be suspended[4] on various conditions. The one-year license suspension was included among those conditions.
The statutory maximum sentence for a conviction for driving while under the influence of alcohol is one year in jail and a $5000 fine. Other conditions that may be imposed by the court, even mandatory conditions, do not increase the statutory maximum for the crime. Likewise, the length of a license suspension has no bearing on the statutory maximum sentence for a conviction for driving while under the influence of alcohol.
The fact that a license suspension is not a part of the maximum "sentence" is made clear by reference to RCW 46.20.270. As that statute provides, a license suspension takes place not upon sentencing, but upon conviction. And RCW 46.20.270(4) defines "conviction" as a final conviction, an unvacated forfeiture of bail, the payment of a fine, a plea of guilty, or a finding of guilt on a traffic law violation charge, "regardless of whether the imposition of sentence or sanctions are deferred[.]"[5]
It is also apparent that our Supreme Court does not believe that a license suspension is part of an offender's "sentence." The Supreme Court has set forth the approved form for guilty pleas for courts of limited jurisdiction in CrRLJ 4.2(g). Paragraph 6(a) of that form contains a space to inform a defendant of the maximum sentence for the crime to which he or she is pleading guilty, and provides: "The crime with which I am charged carries a maximum sentence of ______ days in jail and a $______ fine." Notably, no space is provided for licensing suspensions. Rather, if the plea of guilty will result in license revocation or suspension, the box in paragraph 6(g) should be checked. As paragraph 6(g) advises the defendant, it is not sentencing, but the plea of guilty that results in license suspension. And as the form advises, a defendant pleading guilty to an offense requiring license suspension must surrender his or her license at time of plea, regardless of whether sentencing is set over. It is perhaps also notable that while the Supreme Court saw fit to include the maximum amount of jail time and fine in paragraph 6(a), paragraph 6(g) does not contain a corresponding advisement as to the length of the license suspension, again demonstrating that the length of license suspension does not affect the statutory maximum sentence for a crime.
Read in the context of these statutes and court rules, and viewed in the light of Washington's longstanding line of cases holding that a license suspension is not punishment for purposes of double jeopardy,[6] former RCW 46.61.5055 is ambiguous. The ambiguity created by the Legislature's unfortunate choice in language was corrected by the 1999 amendment to the statute. An amendment to an ambiguous statute may be applied retroactively if it is clearly curative. An amendment is curative if it clarifies or technically *1089 corrects a statute.[7] The 1999 amendment to RCW 46.61.5055 made no substantive change to the statute, but merely moved the licensing suspension language out of the "shall be punished as follows" section of the statute. The 1999 amendment is therefore clearly curative in nature, and should be retroactively applied to Hopkins.
"The purpose of an enactment should prevail over express but inept wording."[8] We must avoid a literal reading of a statute if to do so would lead to absurd results.[9] Various absurd consequences will flow from the majority's interpretation of former RCW 46.61.5055. Among them, virtually every individual who pleaded guilty to driving while under the influence of intoxicating liquor or drugs or physical control with offense dates between September 1, 1995 and July 25, 1999 would be entitled to withdraw their pleas. As stated above, the plea form approved by our Supreme Court does not, and did not at that time, advise defendants as to the length of license suspension. Additionally, it must be noted that Apprendi requires that facts that would increase the statutory maximum be pleaded in the indictment or complaint. A standard complaint for the offense does not allege the blood alcohol level, or whether a defendant refused the test, but simply quotes from the language of RCW 46.61.502. Under the majority's analysis, virtually every person convicted of driving while under the influence of intoxicating liquor with an offense date between September 1, 1995 and July 25, 1999 who had a blood alcohol concentration of .15 or higher or who refused the blood alcohol test will be entitled to resentencing.[10]
Because a blood alcohol concentration of.15 or higher is not a fact that increases the statutory maximum sentence for the offense, Apprendi is not controlling. I therefore respectfully dissent.
NOTES
[1] It is the law in effect at the time a criminal offense is actually committed that controls disposition of the case. State v. Schmidt, 143 Wash.2d 658, 673-74, 23 P.3d 462, 471 (2001). The statute in effect when Hopkins committed her offense will be referred to as former RCW 46.61.5055. It was effective until July 25, 1999, when it was replaced by the current version of the statute, Laws of 1999, ch. 274, § 6.
[2] Former RCW 46.61.5055(1).
[3] The sentence also allowed Hopkins to serve 30 days electronic home monitoring in lieu of the mandatory two days of imprisonment; and ordered her to refrain from criminal violations and alcohol related infractions, obtain an alcohol evaluation, and attend a driving under the influence victim's panel.
[4] Hopkins raised several other issues in her motion for discretionary review, but as they were not included in the order granting discretionary review, we do not address them.
[5] The lower court's findings of fact quoted in McClendon show how one arrest for a single incident of driving while under the influence leads to both administrative and criminal consequences that proceed simultaneously along two separate tracks. McClendon, 131 Wash.2d 853, 857, 935 P.2d 1334 (1997).
[1] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[2] McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).
[3] Former RCW 46.61.5055(1)(b)(iii) provided in applicable part: "The court shall notify the department of licensing of the conviction, and upon receiving notification of the conviction the department shall suspend the offender's license, permit, or privilege[.]" (Emphasis added.)
[4] The judgment and sentence indicates that the period of the suspended sentence was to be 24 years. Presumably, the sentencing court meant to suspend the remainder of jail time and fines for 24 months, or two years.
[5] See also Keyes v. Dep't of Motor Vehicles, 11 Wash.App. 957, 528 P.2d 283 (1974) (when defendant's plea of guilty was not vacated, department of motor vehicles was entitled to treat plea as a conviction for licensing purposes, notwithstanding the fact that the court deferred sentencing and entered judgment nunc pro tunc of not guilty); Jacks v. Nelson, 13 Wash.App. 108, 533 P.2d 452 (1975) (driver who had been found guilty of driving while under the influence of alcohol had been "convicted" for licensing purposes, even though trial court deferred sentencing and later set aside finding of guilty and reduced charge to negligent driving).
[6] See, e.g., State v. McClendon, 131 Wash.2d 853, 935 P.2d 1334 (1997), and the cases cited therein. See also State v. Durnell, 16 Wash.App. 500, 558 P.2d 252 (1976) (no right to counsel in proceeding to declare individual habitual traffic offender and revoke license; license revocation is designed for protection of the public and does not involve punishment). Note that in the proceeding at issue in Durnell, it was the court, not the Department of Licensing, which suspended an offender's license.
[7] In re F.D. Processing, Inc., 119 Wash.2d 452, 460, 832 P.2d 1303 (1992).
[8] Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996).
[9] Whatcom County v. City of Bellingham, 128 Wash.2d at 546, 909 P.2d 1303.
[10] The same would hold true for individuals charged with physical control under RCW 46.61.504.