128 P.3d 139 (2006)
STATE of Washington, Respondent,
v.
Tami Jo HEARN, also known as Tami J. Raider, Appellant.
No. 23715-0-III.
Court of Appeals of Washington, Division Three.
February 9, 2006.
*140 Daniel H. Bigelow, Attorney at Law, Cathlamet, WA, for Appellant.
Kevin M. Korsmo, Attorney at Law, Spokane, WA, for Respondent.
SCHULTHEIS, J.
¶ 1 Tami Jo Hearn was stopped by police for traffic infractions on two separate occasions. On each occasion, she was arrested when police discovered she was driving with a suspended license. On each occasion, police discovered methamphetamine among her possessions in the vehicle in the search incident to arrest. She appeals two convictions for drug possession. First, she contends that the evidence obtained from the search of her vehicle was inadmissible because the statute upon which her arrest was based was declared unconstitutional in City of Redmond v. Moore, 151 Wash.2d 664, 91 P.3d 875 (2004). Second, she asserts that the trial court erred when it ordered that as a condition of her community placement she refrain from associating with known drug offenders. Third, she challenges the court's determination at sentencing that a vehicle was used in the commission of a felony, which resulted in a one-year suspension of her driver's license. RCW 46.20.285(4).
¶ 2 Because Ms. Hearn has not identified the statute under which her license was suspended and the record does not reflect the information, we cannot review her Moore claim. We conclude that the conditions of her community placement did not impermissibly interfere with her constitutional right of association. However, the court erred when determining that she used a motor vehicle in the commission of her crimes. Accordingly, we affirm in part, reverse in part, and remand.

FACTS
¶ 3 On September 28, 2003, Ms. Hearn was stopped by police at Division Street and Lyons Avenue in Spokane, Washington, for a defective rear license plate light. Department of Licensing records showed that her license was suspended in the third decree (DWLS3d). The officer also discovered that she had an active warrant for escape from community custody. Ms. Hearn was placed under arrest. The officer found a brown plastic spoon containing a white powdery substance in her purse while searching her van incident to her arrest. The substance tested positive for methamphetamine. A K-9 unit was dispatched to the scene. The dog reacted to a basket of damp clothing. The officer looked inside the pant leg of a damp pair of jeans and found a small ziplock bag that held a substance that he recognized as marijuana and a tied-up corner piece of a plastic bag that contained a white powder that field-tested positive for methamphetamine. Ms. Hearn was charged with possession of methamphetamine.
¶ 4 On December 23, 2003, Ms. Hearn was stopped for a traffic infraction on North Ritchey Road in Spokane County. The deputy discovered that Ms. Hearn was driving with her license suspended in the second degree (DWLS2d) and arrested her. In a search incident to her arrest, methamphetamine was found in her purse, which was located on the driver's side floorboard. The previously filed information was amended, charging Ms. Hearn with an additional count of methamphetamine possession, for a total of two counts.
¶ 5 Ms. Hearn entered into a drug court waiver and agreement on both counts. She failed to successfully meet the obligations, and her participation in drug court was terminated. The court entered a finding of guilt and proceeded immediately to sentencing. Defense counsel denied that there were any factual disputes with respect to either count. The court found that a vehicle was used in the commission of a felony on both counts and sentenced Ms. Hearn within the standard range. Defense counsel indicated that Ms. Hearn may have been unlawfully arrested in light of Moore, 151 Wash.2d 664, 91 P.3d 875. The trial court observed that with respect to her first arrest Ms. Hearn also had an active warrant, and while her second arrest related to DWLS2d, Moore only applied to DWLS3d. To the extent Ms. Hearn was making a motion to dismiss at that time, the court denied the motion on those grounds.

*141 DISCUSSION

A. Unlawful Arrest
¶ 6 On appeal, Ms. Hearn contends that evidence obtained in the search incident to her second arrest for DWLS2d was inadmissible because the statute upon which her arrest was based was declared unconstitutional in Moore. This matter involves a question of law that we review de novo. Moore, 151 Wash.2d at 668, 91 P.3d 875; State v. Hanson, 151 Wash.2d 783, 784, 91 P.3d 888 (2004).
¶ 7 Ms. Hearn's second arrest is based on a DWLS2d charge, but the Moore court did not examine the DWLS2d statutes. Ms. Hearn can make a claim under Moore only if she meets her burden of demonstrating from the record that her license was suspended pursuant to former RCW 46.20.289 (2002) and former RCW 46.20.324(1) (1965), the statutes declared unconstitutional in Moore. State v. Pulfrey, 154 Wash.2d 517, 529-30, 111 P.3d 1162 (2005). In Pulfrey, the Washington Supreme Court refused to entertain the defendant's argument under Moore where the record did not indicate whether his license was suspended under the unconstitutional statutes. Id.; see State v. Peerson, 62 Wash.App. 755, 777-78, 816 P.2d 43 (1991) (holding that arguments must be supported by the record); see also City of Redmond v. Bagby, 155 Wash.2d 59, 64-66, 117 P.3d 1126 (2005) (holding that due process protections are satisfied if a mandatory license suspension for DWLS2d is based on a criminal conviction under RCW 46.20.265 or.270).
¶ 8 Ms. Hearn merely argues that the second degree driving while suspended statute provides that one may be suspended in the second degree due to "`administrative action taken by the department under chapter 46.20 RCW.'" Appellant's Br. at 8 (quoting RCW 46.20.342(1)(b)(xvii)). But she does not claim that her license was suspended in this manner. Because Ms. Hearn has not shown that Moore is relevant, we cannot review her claim.

B. Community Placement
¶ 9 Ms. Hearn argues that the community placement restriction that she refrain from associating with known drug offenders is an unconstitutional prohibition. As an issue of constitutional magnitude, it may be raised for the first time on appeal. State v. Llamas-Villa, 67 Wash.App. 448, 454-55, 836 P.2d 239 (1992) (citing RAP 2.5(a); State v. Scott, 110 Wash.2d 682, 757 P.2d 492 (1988)); see also State v. Julian, 102 Wash.App. 296, 304, 9 P.3d 851 (2000) (holding that the right to challenge the conditions of community placement is not waived by the failure to object below).
¶ 10 The Sentencing Reform Act of 1981(SRA) permits the court to impose crime-related prohibitions as part of a sentence. RCW 9.94A.505(8). It also allows a court to impose a community placement condition prohibiting contact with a "specified class of individuals." RCW 9.94A.700(5)(b). An offender's usual constitutional rights during community placement are subject to SRA-authorized infringements. State v. Riles, 135 Wash.2d 326, 347, 957 P.2d 655 (1998) (citing State v. Ross, 129 Wash.2d 279, 287, 916 P.2d 405 (1996)). Freedom of association may be restricted if imposed sensitively and if the restriction is reasonably necessary to accomplish the essential needs of the state and public order. State v. Riley, 121 Wash.2d 22, 37-38, 846 P.2d 1365 (1993); State v. Ancira, 107 Wash.App. 650, 654, 27 P.3d 1246 (2001) (quoting Riles, 135 Wash.2d at 350, 957 P.2d 655). A crime-related prohibition will be reversed only if it is manifestly unreasonable. Riley, 121 Wash.2d at 37, 846 P.2d 1365 (quoting State v. Blight, 89 Wash.2d 38, 41, 569 P.2d 1129 (1977)).
¶ 11 In Llamas-Villa, a condition of community placement that an offender not associate with persons using, possessing, or dealing with controlled substances withstood a challenge that it was vague and overbroad and that it was not crime related. Llamas-Villa, 67 Wash.App. at 454-56, 836 P.2d 239. In Ancira, the trial court prohibited the offender from contacting his wife and children. The appellate court reversed, finding the order infringed on his right to parent. Ancira, 107 Wash.App. at 653-57, 27 P.3d 1246. The fundamental interest Ms. Hearn asserts here is her right of association.
*142 ¶ 12 In Riley, the court upheld the trial court's conditions of sentencing that prohibited a convicted computer hacker from owning a computer, associating with other computer hackers, and communicating with computer bulletin boards during his community supervision. The court held that these conditions would help prevent the offender from committing further criminal conduct during that period, and were "reasonably crime related as a means of discouraging his communication with other hackers." Riley, 121 Wash.2d at 38, 846 P.2d 1365. Accordingly, the provisions were not an unconstitutional restriction of his freedom of association. The same is true here.
¶ 13 Ms. Hearn asserts that the condition that she refrain from associating with known offenders is more restrictive than necessary to accomplish the State's needs. She argues that the known drug offenders she is prohibited from associating with are not as dangerous as the class of persons currently actively involved in drugs that the offender in Llamas-Villa was prohibited from seeing. First, the constitutional challenge in Llamas-Villa was that the restriction was invalid because it is not narrowly drawn to provide sufficient notice of what conduct was prohibited. Llamas-Villa, 67 Wash.App. at 455-56, 836 P.2d 239. It was not related to the right to association. Second, discouraging further criminal conduct is a goal of community placement. Riley, 121 Wash.2d at 38, 846 P.2d 1365; State v. Letourneau, 100 Wash.App. 424, 438, 997 P.2d 436 (2000). Recurring illegal drug use is a problem that logically can be discouraged by limiting contact with other known drug offenders. Because the restriction here is not an unconstitutional prohibition, comparing it to the restriction in Llamas-Villa is pointless.
¶ 14 Ms. Hearn also asserts that the restriction is invalid because it is not crime related. No causal link need be established between the condition imposed and the crime committed, so long as the condition relates to the circumstances of the crime. Llamas-Villa, 67 Wash.App. at 456, 836 P.2d 239. As stated in Llamas-Villa, "[s]ince associating with individuals who use, possess, or deal with controlled substances is conduct intrinsic to the crime for which Llamas was convicted, it is directly related to the circumstances of the crime." Id. The same can be said for associating with known drug offenders. The restriction here is not manifestly unreasonable.

C. Use of a Motor Vehicle in the Commission of a Felony
¶ 15 The State argues that because Ms. Hearn did not object to the facts set forth in the police reports below, she has waived the issue on appeal. The State correctly points out that the police reports set forth the basis of the court's finding that a vehicle was used in the commission of a felony on each count. However, the trial court's determination is not factual. There were no disputed facts. This issue involves the application of a statute to a specific set of facts. Our review is de novo. State v. Kistner, 105 Wash.App. 967, 971, 21 P.3d 719 (2001).
¶ 16 RCW 46.20.285(4) provides for a one-year revocation of a person's driver's license for "[a]ny felony in the commission of which a motor vehicle is used." "Used" in the statute means "`employed in accomplishing something.'" State v. Batten, 95 Wash. App. 127, 129, 974 P.2d 879 (1999) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2524 (3d ed.1966)), aff'd, 140 Wash.2d 362, 997 P.2d 350 (2000). The statute applies only when the vehicle has been "employed in accomplishing" the crime. Batten, 95 Wash.App. at 129-30, 974 P.2d 879. In cases of felony possession, the statute has been interpreted to require that the possession "have some reasonable relation to the operation of a motor vehicle or ... the use of the motor vehicle must contribute in some reasonable degree to the commission of the felony." Id. at 131, 974 P.2d 879; State v. Griffin, 126 Wash.App. 700, 708, 109 P.3d 870 (2005). Ms. Hearn argues the absence of such a connection.
¶ 17 A connection has been found when the defendant was given cocaine in exchange for a ride in his car in that the use of the car directly contributed to the commission of the crime of possession of cocaine. Griffin, 126 *143 Wash.App. at 708, 109 P.3d 870. This court also found the use of a vehicle was clearly supported in State v. Dykstra, 127 Wash. App. 1, 11-12, 110 P.3d 758 (2005), review denied (Wash. Jan. 10, 2006), where the defendant and his accomplices to an auto theft ring drove around looking for cars to steal, drove stolen cars, posted someone in a lookout car during a theft, and drove away unwanted engine parts after disassembly.
¶ 18 In Batten, the defendant was arrested in his car. Police found a handgun he was prohibited from possessing hidden under the seat and methamphetamine-laced paraphernalia on the console of the vehicle. Batten, 140 Wash.2d at 363, 997 P.2d 350. The gun had been in the car "for several days in a spot where it would not be easily detected." Id. at 366, 997 P.2d 350. The court held that because the defendant employed the vehicle to store and conceal the weapon, there was a sufficient relationship between the use of the vehicle and the unlawful weapon possession. Id. Similarly, although the methamphetamine was not hidden, because the console was a "repository" for the illegal substance, there was also a sufficient relationship between the drugs and the vehicle to apply the statute. Id.
¶ 19 Here, the methamphetamine was found in Ms. Hearn's effects, i.e., within her purse and in clothing within a basket. The drugs found in Batten were located upon or under fixtures of the vehicle itself, which stored and concealed the contraband. The Batten criteria is not met here because the drugs did not have a reasonable relation to the operation of the vehicle and the use of the vehicle did not contribute in some reasonable degree to the commission of the crime. Batten, 95 Wash.App. at 131, 974 P.2d 879. Unlike in Batten, the vehicle here did not play a role in the drug possession.

CONCLUSION
¶ 20 We affirm the conviction, but reverse the finding that Ms. Hearn used a motor vehicle in the commission of her crimes. Accordingly, we affirm in part and reverse in part, and remand for proceedings consistent with this opinion.
WE CONCUR: BROWN, J., and THOMPSON, J. Pro Tem.