[No. 41539-9-II.   Division Two.   June 12, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. ALLEN K. DUPUIS, *Appellant*.

*Maureen M. Cyr* (of *Washington Appellate Project*), for appellant.

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Allen K. Dupuis appeals the trial court's finding that his driver's license must be revoked under RCW 46.20.285(4) because he used a motor vehicle while committing the offense of second degree taking or riding in a motor vehicle without the owner's permission. Because Dupuis used a motor vehicle to commit his underlying offense, and because the legislature requires the revocation of driving privileges of those who have been convicted of offenses even when driving is an essential element of the crime, we affirm.

## FACTS

¶2 Dupuis lived with Kelli Armfield and her mother, Marilea Armfield. Marilea Armfield was the protected person in a guardianship proceeding. Following a hearing,

the guardianship court ordered Dupuis to transfer possession of the car he had been driving to Marilea Armfield's guardian. Dupuis gave two keys to the guardian's attorney and left the courtroom. When family members went outside and tried to use the keys, they did not work. Dupuis then went to the vehicle, used the touch pad to unlock it, and drove away. Police recovered the vehicle five days later in Snohomish County at an impound lot.

¶3 The State charged Dupuis with second degree taking or riding in a motor vehicle without the owner's permission, and he entered an *Alford* plea.[1] At sentencing, defense counsel argued that the Department of Licensing was not authorized to revoke Dupuis's driver's license because a motor vehicle was not used in the offense, but the trial court disagreed. The court ordered the clerk "to immediately forward an Abstract of Court Record to the Department of Licensing, which must revoke [Dupuis's] driver's license." Clerk's Papers at 25.

¶4 Dupuis now appeals the finding that he was using the motor vehicle when he took it without permission and the corresponding license revocation.

## ANALYSIS

APPLICABILITY OF LICENSE REVOCATION STATUTE, RCW 46.20.285

¶5 RCW 46.20.285(4) requires revocation of the driver's license of any person who uses a motor vehicle in the commission of a felony. Because this case concerns the application of the statute to a specific set of facts, our review is de novo. *State v. Hearn*, 131 Wn. App. 601, 609, 128 P.3d 139 (2006).[2]

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct 160, 27 L. Ed. 2d 162 (1970); *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

[2] This issue is not moot because the license revocation period is not triggered until the underlying conviction becomes final. RCW 46.20.285; *see also City of Redmond v. Bagby*, 155 Wn.2d 59, 64, 117 P.3d 1126 (2005) (under RCW 46.20.285, license suspension is stayed until conviction becomes final).

■ ¶6 RCW 46.20.285 does not define "use," but we have cited the plain and ordinary meaning of the word in finding that in order for RCW 46.20.285(4) to apply, a vehicle must have been employed in accomplishing the crime. *State v. Batten*, 95 Wn. App. 127, 129-30, 974 P.2d 879 (1999), *aff'd*, 140 Wn.2d 362, 997 P.2d 350 (2000). The relevant test is whether the felony had some reasonable relationship to the operation of a motor vehicle, or whether use of a motor vehicle contributed in some reasonable degree to the commission of the felony. *State v. B.E.K.*, 141 Wn. App. 742, 746, 172 P.3d 365 (2007) (citing *Batten*, 140 Wn.2d at 365).

¶7 Dupuis argues that a motor vehicle is incidental to and not used to commit a crime if it serves simply as a means of transportation from the scene. As support, he cites two cases where the defendants' possession of drugs had no relationship to the cars they were driving when they were arrested and did not require license revocation under RCW 46.20.285(4). *See State v. Wayne*, 134 Wn. App. 873, 875, 142 P.3d 1125 (2006) (use of car is merely incidental if possession is with the person rather than the car); *Hearn*, 131 Wn. App. at 610-11 (drugs found in defendant's effects did not have reasonable relation to operation of vehicle such that use of vehicle contributed to commission of offense). Dupuis contrasts these holdings to a case where the defendant obtained cocaine in exchange for giving someone a ride in his car. *State v. Griffin*, 126 Wn. App. 700, 708, 109 P.3d 870 (2005). The use of the car was not incidental but contributed directly to the crime of cocaine possession and was sufficient to trigger RCW 46.20.285(4). *Griffin*, 126 Wn. App. at 708.

¶8 Dupuis also cites California cases concerning an almost identical license revocation statute. CAL. VEH. CODE § 13350(a)(2); *see Batten*, 140 Wn.2d at 366 (citing as support California case dealing with that state's license revocation statute). The California Court of Appeal found the statute triggered when the defendant used a car to travel to and from the burglary scene and to conceal the

fruits of his crime. *In re Gaspar D.*, 22 Cal. App. 4th 166, 170, 27 Cal. Rptr. 2d 152 (1994); *see also People v. Gimenez*, 36 Cal. App. 4th 1233, 1237, 42 Cal. Rptr. 2d 681 (1995) ("use" found under similar facts even though theft was not completed). Dupuis contends that because he used the motor vehicle only to leave the scene, he did not use it in a manner that implicated Washington's license revocation statute.

¶9 Dupuis also argues that where the car is merely the object of the crime, RCW 46.20.285(4) does not apply. As support, he cites this court's decision in *B.E.K.*, where the juvenile defendant was convicted of second degree malicious mischief for spray painting a police vehicle. 141 Wn. App. at 744. License revocation under RCW 46.20.285(4) was not required because the defendant did not employ the patrol car to commit his act of mischief; rather, he simply made the car the object of his crime. *B.E.K.*, 141 Wn. App. at 748. The nexus between the crime and the vehicle was based not on a manner of use but on a relationship similar to that between an offender and his victim. *B.E.K.*, 141 Wn. App. at 748.

¶10 Where a vehicle was both the object and the instrumentality of the offense, however, RCW 46.20.285(4) applied. *State v. Dykstra*, 127 Wn. App. 1, 12, 110 P.3d 758 (2005), *review denied*, 156 Wn.2d 1004 (2006). As part of his participation in an auto theft ring, Dykstra used cars to drive around looking for others to steal, and he also took possession of the stolen cars by driving them away from the scene. *Dykstra*, 127 Wn. App. at 12. Division Three of this court held that the record supported the trial court's finding that Dykstra used a motor vehicle in committing first degree theft. *Dykstra*, 127 Wn. App. at 12.

¶11 Division Three recently applied similar reasoning when the defendant argued that his possession of a stolen vehicle did not involve use of a vehicle in the manner contemplated by RCW 46.20.285(4). *State v. Contreras*, 162 Wn. App. 540, 254 P.3d 214, *review denied*, 172 Wn.2d 1026

(2011). In rejecting this argument, the court first referred to *B.E.K.*, where the police vehicle was only the object of the crime. *Contreras*, 162 Wn. App. at 547 (citing *B.E.K.*, 141 Wn. App. at 748). Division Three then found the facts in *Contreras* distinguishable:

> Here, Mr. Contreras used this car. He tried to relicense it. He possessed it. It was not something he did to the car. It was his use and his possession and assertion of ownership that satisfied the elements of the [crime].
>
> He drove the car to the state patrol office and attempted to relicense it with the false VIN [(vehicle identification number)] tags from his previous car. The car was not simply the object upon which he visited his crime. The court, then, did not err by finding that Mr. Contreras used a motor vehicle in the commission of a felony.

162 Wn. App. at 547 (citation omitted).

¶12 Dupuis argues that both *Dykstra* and *Contreras* are distinguishable because he used the car only as a means to transport himself from the scene. The felony to which he pleaded guilty did not occur, however, while the car was parked outside the courthouse. Rather, it occurred when Dupuis drove the vehicle away without permission. Although it is possible to take a car without using it (as when, for example, a tow truck is employed), Dupuis used the car to accomplish the crime of taking or riding in a motor vehicle without the owner's permission. *See B.E.K.*, 141 Wn. App. at 748 (offender must operate or use vehicle in some fashion to carry out the crime).

¶13 Dupuis also argues, however, that the reference to "use" in RCW 46.20.285(4) is ambiguous because his underlying offense already punishes him for using a motor vehicle. He asserts that under the rule of lenity, the license revocation provision should not apply in this instance. *See B.E.K.*, 141 Wn. App. at 745 (under the rule of lenity, if two possible statutory constructions are permissible, the court construes the statute strictly against the State in favor of a criminal defendant). But when read in context, the fact that

operating a motor vehicle is already an essential element of taking a motor vehicle without the owner's permission does not render the license revocation statute either ambiguous or inapplicable to Dupuis. *See State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005) (plain meaning of statute is discerned in part from context of statute in which provision is found). With one exception, the other subsections of RCW 46.20.285 also require revocation of the privilege to drive despite the fact that operating a motor vehicle is an essential element of the underlying offense. *See* RCW 46.20.285(1) (vehicular homicide), (2) (vehicular assault), (3) (driving under the influence), (5) (hit and run), (7) (reckless driving). *But see* RCW 46.20.285(6) (perjury or false statement or affidavit under Title 46 RCW or other law relating to ownership or operation of motor vehicle).

¶14 In particular, subsections (3) and (7) of RCW 46.20-.285 require revocation where the defendant has already been punished solely for driving a motor vehicle, albeit in a compromised manner. These subsections and subsection (4) were passed simultaneously so they are in pari materia and should be construed together in determining their meaning.[3] *In re Arbitration of Mooberry*, 108 Wn. App. 654, 658, 32 P.3d 302 (2001); *see also State v. Williams*, 94 Wn.2d 531, 547, 617 P.2d 1012 (1980) (purpose of reading statutory provisions in pari materia with related provisions is to determine legislative intent underlying entire statutory scheme and to read the provisions as a unified whole). When viewed as a whole, RCW 46.20.285 clearly contemplates revocation of a driver's license following a crime involving the operation of a motor vehicle. We see no ambiguity sufficient to trigger the rule of lenity and hold

---

[3] Enacted in 1965, the subsections in RCW 46.20.285 were renumbered in 1983. LAWS OF 1965, Ex. Sess., ch. 121, § 24; LAWS OF 1983, ch. 165, § 15.

that, as a matter of law, the trial court did not err in applying RCW 46.20.285(4) to Dupuis.

¶15 Affirmed.

WORSWICK, C.J., and HUNT, J., concur.

Review denied at 175 Wn.2d 1024 (2012).