IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34834-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AARON LLOYD CARPER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant, | ) | |
| | ) | |
| BRIAN DENNIS BAIRD, JESSICA J. | ) | |
| MAAS, BONITA ANNETTE MULLINS, | ) | |
| | ) | |
| Defendants. | ) | |

FEARING, J. — The trial court, after a jury trial, convicted Aaron Carper of three counts of possession of stolen property. The trial court thereafter suspended Carper's motor vehicle driver's license. Carper appeals the convictions on numerous grounds and challenges his driver's license revocation. We affirm his convictions, but vacate the driver's license suspension order.

FACTS

This prosecution concerned chattels found at a residence on Spokane's South Perry Street and Aaron Carper's connection to the chattels. On March 8, 2016, Spokane County Sheriff Corporal Michael McNees responded to a call complaining of squatters

occupying a vacant house on South Perry Street. The owner of the house had died in 2015. Brian Baird, Baird's girlfriend Jessica Maas, and Dennis Swanson resided inside the house. Bonita Mullins resided in a camper stationed in the backyard. Upon arriving at the Perry Street address, Corporal McNees spoke to Baird regarding his tenancy at the residence. During the conversation, McNees observed a thirty-foot flatbed trailer large enough to haul cars on the residence's front yard. The trailer contained a built-in toolbox full of objects. Baird untruthfully claimed that the owner of the residence transported the trailer to the house to remove garbage. Through a police records search based on the trailer's license plate number, McNees discerned that Ronald Miller, the licensee of the trailer, had reported the trailer as stolen.

Brian Baird allowed Corporal Michael McNees into the Perry Street residence backyard, where McNees observed three more trailers: a camper trailer, a pop-up trailer, and another flatbed trailer large enough to haul cars. Corporal McNees' review of police records unearthed that David Tremaine reported the flatbed trailer and a motorcycle as purloined. When Corporal McNees asked Baird about a missing motorcycle, Baird denied knowledge of any motorcycle. Dennis Swanson, who had joined the conversation, admitted the presence of a motorcycle and retrieved the vehicle from inside the house. The motorcycle exhibited exposed wires and was missing an ignition. When law enforcement later returned the motorcycle to the owner, the owner replaced the missing ignition.

2

Jessica Maas, who also joined the conversation with Corporal Michael McNees, falsely claimed no one else was then present inside the residence. Another sheriff deputy, however, found appellant Aaron Carper inside the vacant home. Carper had found refuge at the residence two days earlier. Law enforcement did not yet suspect Carper of any wrongdoing.

Spokane County sheriff deputies impounded the two stolen flatbed trailers: Ronald Miller's trailer and David Tremaine's trailer. A deputy discovered tools and construction material inside the toolbox of Miller's trailer. The materials included ladders, bins, saw horses, a sawzall, hand tools, paint, stain, a transit, a saw, gas can, trim, and a shop vac. A sheriff deputy also found a license plate of another vehicle in the trailer's toolbox. A search discerned that the license plate belonged to a Continental enclosed trailer that Joseph Neuman, the trailer licensee, reported, on March 4, 2016, as stolen. Law enforcement never later recovered Neuman's trailer.

A day later, on March 9, 2016, Spokane County Sheriff Detective Dean Meyer contacted Joseph Neuman and asked Neuman to appear at the sheriff's impound yard to ascertain whether the construction supplies and tools found in Ronald Miller's trailer toolbox belonged to him. Neuman came to the yard and informed the detective that he and Eric Pierce, Neuman's construction business partner, owned the objects found in the trailer toolbox. The two had stored the chattels in the Continental trailer. Apparently someone removed the chattels from Neuman's Continental trailer and placed the chattels

3

in Miller's flatbed trailer toolbox. Pierce also went to the impound yard and identified the stolen property.

Based on the presence of the stolen motorcycle within the residence and the stolen trailers located in the yard of the residence, Detective Dean Meyer procured a search warrant for the abandoned South Perry abode. Detective Meyer and other sheriff deputies executed the search warrant on March 10, 2016. No one answered a knock on the dwelling's door, so officers breached the door. The entering law enforcement officers found Brian Baird, Jessica Maas, Dennis Swanson, and Bonita Mullins inside the home, and the deputies detained the quartet. Aaron Carper was not present.

Spokane County sheriff deputies searched the South Perry residence, and the combing revealed objects matching property stolen from Joseph Neuman and Eric Pierce and found in Ronald Miller's flatbed trailer toolbox. Neuman and Pierce journeyed to the dwelling and identified more objects as being their respective personal property. Those chattels included used saw blades, new saw blades, a zip wall kit, little hand tools, sand paper, tin snips, tape, tile spacers, bit cases, and odds and ends.

According to Joseph Neuman, when someone stole his enclosed Continental trailer, the trailer's toolbox contained between $10,000 and $12,000 worth of tools and supplies. Law enforcement never located many of the purloined high value tools and supplies. Items never found include nail guns, a Bosch table saw, a Miter table saw, three circular saws, a jig saw, a heavy duty electric drill, a roto hammer, a cordless screw gun,

4

a router, a belt sander, furniture dollies, extension cords, an air nailer, a framing gun, a roofing gun, a paint mixer, a power washer, two Makita drill sets, chop saws, and air compressors.

Dennis Swanson informed investigating law enforcement officers that the construction materials and tools did not appear at the South Perry home until Aaron Carper temporarily occupied the dwelling. Jessica Maas concurred. Maas declared that she asked Carper if he stole the objects, and Carper reassured her that he owned all the tools and construction supplies. Swanson also reported that the unignitioned motorcycle appeared at the residence when Carper arrived. Nevertheless, Swanson explained that all squatters came and went as they pleased, and he never saw Carper bring any stolen property to the home. Maas stated she espied Carper working on the motorcycle, but Maas could not identify the motorcycle's color. Swanson stated that Brian Baird and an unnamed individual performed repairs on the motorcycle. Swanson, unlike Mass, accurately identified the cycle's color.

## PROCEDURE

On June 3, 2016, the State of Washington filed an information naming Aaron Carper, Brian Baird, Jessica Maas, and Bonita Mullins as defendants. Four of the six counts in the information charged Carper with crimes. Count one alleged second degree possession of stolen property and alleged that Carper, between March 8 and March 10, 2016, retained Joseph Neuman's Continental trailer and the purloined tools and

5

construction materials once stored in Joseph Neumann's 2013 Continental utility trailer, all with a value exceeding $750. The information does not indicate whether the State sought to claim Carper possessed the expensive tools never found or only the tools and supplies found inside Ronald Miller's trailer's toolbox and inside the Perry residence. The facts become confusing because Joseph Neuman, not Ronald Miller, owned the tools and construction supplies found in Miller's trailer's toolbox, where law enforcement also found the Continental trailer's license plate.

Count two of the information charged Aaron Carper with second degree possession of stolen property and asserted that Carper, on or about March 8, 2016, possessed Ronald Miller's pilfered 1991 flatbed trailer with a value exceeding $750. Count three accused Carper of possession, on or about March 8, 2016, of a stolen motor vehicle identified as a 1994 Yamaha motorcycle. Finally, count four charged Carper with third degree possession of stolen property and alleged Carper held, on or about March 8, 2016, David Tremaine's purloined flatbed trailer in a value deceeding $750.

By the time of trial, Aaron Carper remained the only defendant in the prosecution. On the first day of trial, the State amended the information to exclude Joseph Neuman's Continental trailer as one of the items of stolen property in count one. Thus, the State limited count one's charge of second degree possession of stolen property to the filched tools and construction materials once stored in Joseph Neuman's Continental trailer.

During jury selection, the following exchange occurred:

MR. CASHMAN [State's counsel]: During the course of the trial, you may hear from witnesses that were connected to the property or connected to the defendant in some way, and they've received a reduction in a sentence or dismissal of a criminal case based upon their cooperation with the State to testify. Do you have a problem with that?

PROSPECTIVE JUROR NO. 3: No.

MR. CASHMAN: Does anyone here have a problem with someone getting a reduction in a charge or getting a case dismissed because they've helped the State? Would that weigh in on anyone's ability to weigh or to determine their credibility? Number 19.

. . . .

PROSPECTIVE JUROR NO. 9: I'm wrestling with this because we've always said to our kids you sleep with the dogs, you wake up with the fleas, okay. Birds of a feather flock together.

MR. CASHMAN: Sure.

PROSPECTIVE JUROR NO. 9: So if it's a close connection, you know, they were friends, hung out together, I would have a hard time believing maybe the credibility of the witness.

MR. CASHMAN: Okay. Does anyone here feel the same way as Number 9?

PROSPECTIVE JUROR NO. 14: I do.

MR. CASHMAN: Number 14, why?

PROSPECTIVE JUROR NO. 14: I go by the same adage. You lay down with dogs, you get up with fleas.

MR. CASHMAN: So you think it would be improper for the State to present testimony from a witness?

PROSPECTIVE JUROR NO. 14: Not improper, but probably the jurors would have to look at that differently. I would.

. . . .

MR. CASHMAN: Do you think it would be proper in that situation if the State needed to prove the element against the defendant to give a person a cooperation agreement essentially so that they can prove that element?

PROSPECTIVE JUROR NO. 14: That's tough.

MR. CASHMAN: Why do you think it's tough?

PROSPECTIVE JUROR NO. 14: I don't know. Like I said, if they're associates, I think they have the same penalty.

MR. CASHMAN: Okay. So your position then, just so I'm phrasing

7

it correctly, would be that you would have a problem weighing—being able
to fairly and accurately weigh the credibility of that witness because they
have a cooperation agreement?

PROSPECTIVE JUROR NO. 14: Exactly.

. . . .

PROSPECTIVE JUROR NO. 14: Could I backtrack a minute back
while just if I've experienced anything? Last November during wind
storm, we were fortunate enough to get a generator. My neighbor and her
friends tried stealing it, 10,000 watt. They couldn't lift it. They failed.
They tried, but she's incarcerated right now for stolen property, identity
theft, mail theft. So yeah, I would be a little biased against anything like
this for sure.

MR. CASHMAN: So but that bias has nothing to do with the
cooperation agreement. That bias is simply based upon your experience?

PROSPECTIVE JUROR NO. 14: Mm-hmm.

MR. CASHMAN: Based upon what you said you experienced just
now or during the wind storm, you don't think you could set that aside?

PROSPECTIVE JUROR NO. 14: I don't think so because I
witnessed all of her associates that came in and out of her house, and
they're all cut from the same bolt. I hate to be so firm, but.

Report of Proceedings (RP) at 52-55. The trial court excused juror 14 for cause over an

objection from Aaron Carper. The court emphasized that the juror stated the cooperation

agreement between the State and the witness would bias him.

During trial, the State reviewed with Joseph Neuman photographs of chattels

stolen from Joseph Neuman and Eric Pierce and taken to the impound yard. Thereafter

the State questioned Neuman about the value of some of the property:

THE COURT: . . . Then you can go take the stand. Thank you. So
when you—what would you approximate the value of the items you were
able to recover, not the total value that you previously testified to, but what
you just were able to recover on March 9th. What would you think the
approximate value was.

A I'd say maybe $500 to $700, not a huge amount.

8

> THE COURT: Okay. Now, was that the last time—on March 9th the last time you had contact with Detective Meyer.
> A The last time? No.
> THE COURT: Okay. When was the next time you had contact.
> A I'm not—I don't know dates. I'm not sure dates or what timeframes really, but it was he called me again. They think they located some more of our stuff.
> THE COURT: So what happened after he called you the second time.
> A We went to the location that thought we'd find stuff, and we identified more stuff?
> THE COURT: Do you remember the address.
> A No. I remember what street it was on.
> THE COURT: What street was it on?
> A On Perry Street.

RP at 186-87. Remember that Joseph Neuman reviewed the stolen property housed at the impound yard on March 9.

During trial and after reviewing photographs of chattels found at the South Perry residence that belonged to Eric Pierce and Joseph Neuman, the State asked Neuman about the value of those objects:

> THE COURT: . . . Again, sir, not talking about the total value of everything that was contained within the trailer, only talking about what you were able to recover that day when you went to the house, what would you approximate the value of those items to be.
> A Again, probably 500 to 700 maybe at the most. That wasn't a ton.

RP at 193-94.

During Eric Pierce's testimony, the State asked him about the value of chattels recovered:

Q So given that you had two days to recover a small portion of what was actually contained within that trailer, what would you say the approximate value of everything that you were able to recover?

A Probably around $700.

Q Okay. And, again, that's not—that's only taking into consideration everything that was able to be recovered. That's not the total value of everything taken?

A Correct.

Q No, do you know Mr. Caper?

A I do not.

Q And just to backtrack, that's $700. Again, that's an approximation, correct?

A Correct.

Q It could be valued at higher, could be less?

A Yes.

RP at 210-11.

When discussing jury instructions, the State of Washington requested a lesser included instruction for count one, which alleged Aaron Carper possessed the tools and construction supplies taken from Joseph Neuman's Continental trailer. The State wanted the jury to hold the option to convict Aaron Carper of third degree possession of stolen property, which entailed property valued at $750 or below, rather than second degree possession, which required proof of possession of property valued in excess of $750. The State noted that the jury may find the value of the stolen property to warrant a conviction for the lower crime. The trial court agreed and delivered a lesser included instruction to the jury. The court also instructed the jury that it could only convict based on the stolen property possessed by Carper between March 8 and 10, 2016.

10

During closing, the State of Washington argued Aaron Carper possessed all of the

tools pilfered from Joseph Neuman's Continental trailer.  The State urged:

> Another thing that we have to prove particularly with Counts I, II
> and III—or excuse me—Count I, II, and IV is the value of the property.
> Let's talk about Count I.
>
> Both Mr. Neuman and Mr. Pierce testified the property was worth
> upwards of thousands.  Mr. Neuman approximated at [$]10,000.  Mr. Pierce
> approximated at [$]7,000 give or take.  Of the items they were able to
> recover, if you recall the testimony of Mr. Neuman, was somewhere
> between $500 and $1,200, and Mr. Pierce indicated $700, maybe more or
> maybe less.  This is an approximation.  That is the reason why the State
> requested the lesser included.
>
> So the State believes that the evidence shows that the defendant
> *possessed the total amount of tools.*  However, as finders of fact, you are
> allowed to give weight and credibility to the evidence before you.  If you
> find that the value of the property was less than $750, then you have the
> ability to find him guilty not of possession in the second degree, but
> possession of stolen property in the third degree because the difference in
> that is the value of the property, but, again, recall the testimony of Mr.
> Neuman and Mr. Pierce, *both of which approximated the value of
> everything that was in the trailer was well [sic] thousands of dollars.*

RP at 313-14 (emphasis added).

In his closing, defense counsel addressed the State's argument about the value of

the stolen property by reminding the jury that the State charged Aaron Carper with the

crime of possession, not theft.  Defense counsel wished the jury to understand that it must

base the level of the crime on the value of recovered items, a $500-$700 value to which

Joseph Neuman testified, not some other value of some other property.  Counsel

reminded the jury that Mr. Pierce testified that the total value of chattels recovered was

11

around $700. Counsel addressed the value claimed by the State: "[i]t's a very specific

number except for one thing. It doesn't relate to this case." RP at 320.

In rebuttal, the State argued:

> If you recall Mr. Neuman's testimony, his testimony he broke it into two sections. Remember he talked about when he first recovered it, the property at the sheriff's lot, and then the second time when he recovered it at the house of 5321 South Perry Street.
> Recall his testimony about the values he's assessed for the property that he recovered during those two times. He didn't say the total amount was $700. He said the total amount that we were able to recover during this first period of time I believe he stated was $500 to $700 and the second time he indicated I believe around $500 to $700 I believe.
> That's important because it comes together. It's not simply this total value. He broke it down into two separate sections to indicate the value of the property that he recovered on the two separate times, not just this one time as indicated in the defense's closing.

RP at 337.

The jury convicted Aaron Carper of all four counts, including second degree

possession of stolen property on count one. In other words, the jury did not reduce the

charge of possession of tools and construction supplies taken from Joseph Neuman's

Continental trailer to third degree possession of stolen property. The trial court found

that Carper's conviction for possession of a stolen vehicle qualified as a felony in the

commission of which Carper used a motor vehicle. The court's finding resulted in a

mandatory license revocation under RCW 46.20.285(4).

12

LAW AND ANALYSIS

Removal of Juror

Typically a criminal defendant assigns error to the trial court's refusal to remove a

juror that the defendant considers biased against him or her. Aaron Carper assigns error

to the trial court's excusal of a juror that Carper deemed favorable to him. Carper

complains about the trial court's removal of juror 14 for cause. We discern no error.

Under the Washington Constitution, a defendant is guaranteed the right to a fair

and impartial jury. WASH. CONST. art. I, § 21. This right, however, does not extend to a

right to be tried by a particular juror or by a particular jury. *State v. Gentry*, 125 Wn.2d

570, 615, 888 P.2d 1105 (1995).

A party may challenge a juror for cause and "[i]f the judge after examination of

any juror is of the opinion that grounds for challenge are present, he or she shall excuse

that juror from the trial of the case." CrR 6.4(c)(1). A party may challenge a juror for

cause on the basis of actual bias, statutorily defined, in part, as "the existence of a state of

mind on the part of the juror in reference to the action, or to either party, which satisfies

the court that the challenged person cannot try the issue impartially and without prejudice

to the substantial rights of the party challenging." RCW 4.44.170(2).

The trial court possesses discretion when granting or denying a challenge for

cause, and this reviewing court will reverse the trial court only for manifest abuse of

discretion. *State v. Gilcrist*, 91 Wn.2d 603, 611, 590 P.2d 809 (1979). A trial court

abuses its discretion if its decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons. *State v. Berniard*, 182 Wn. App. 106, 118, 327 P.3d 1290 (2014). This standard of review recognizes that the trial court holds the best position to determine whether a juror can be fair and impartial because the trial court observes the juror's demeanor and evaluates the juror's answers. *State v. Birch*, 151 Wn. App. 504, 512, 213 P.3d 63 (2009).

When a party challenges a prospective juror for cause, the trial court must determine whether the juror can set aside preconceived ideas and try the case fairly and impartially. *Hough v. Stockbridge*, 152 Wn. App. 328, 341, 216 P.3d 1077 (2009). Two federal district courts have removed potential jurors because of a predisposition to challenge the credibility of a cooperating government witness. *United States v. Wilson*, 493 F. Supp. 2d 422, 432 (E.D.N.Y. 2006); *United States v. Devery*, 935 F. Supp. 393, 403 (S.D.N.Y. 1996), *aff'd sub nom. United States v. Torres*, 128 F.3d 38 (2d Cir. 1997). In turn, two federal appeals courts have affirmed trial courts' dismissal for cause of jurors who questioned the credibility of a witness who reached a plea agreement with the prosecution. *United States v. Evans*, 455 F.3d 823, 824 (8th Cir. 2006); *United States v. Mills*, 987 F.2d 1311, 1314 (8th Cir. 1993).

Juror 14 in Aaron Carper's trial admitted that he could not fairly weigh the credibility of the State's witnesses who reach a plea agreement to testify against another defendant. He questioned the propriety of the State affording one defendant a lighter

sentence in exchange for testifying against another defendant who faced a stiffer

sentence. The trial court allowed another potential juror to remain in the jury pool

despite the juror expressing concern about a codefendant who cooperates with the State.

Nevertheless, that juror never expressed an inability to fairly weigh the codefendant's

credibility. The trial court did not abuse its discretion in removing juror 14.

Prosecutorial Misconduct

Aaron Carper complains that the prosecution committed misconduct by amending

the State's information on the day of trial to relieve itself of proving possession of Joseph

Neuman's unrecovered Continental trailer while still arguing that Carper possessed the

high value chattel previously stored inside the trailer but never recovered. Carper asserts

that the prosecution continually encouraged the jury to find that he possessed all the tools

previously located in the Continental trailer and those tools possessed a value of $10,000

to $12,000.

Prosecutorial misconduct requires reversal if the defendant meets the burden of

showing that the prosecutor's conduct was both improper and prejudicial in the context of

the entire trial. *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d 976, *cert. denied*, 135

S. Ct. 2844, 192 L. Ed. 2d 876 (2015). Prejudice is established only if there is a

substantial likelihood that the instances of misconduct affected the jury's verdict. *State v.

Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995). Allegedly improper arguments by the

prosecutor must be reviewed in the context of the total argument, the issues in the case,

the evidence addressed in the argument, and the jury instructions. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007).

Aaron Carper never complained at trial to the prosecution's conduct, about which he now asserts misconduct. The failure to object to an improper remark constitutes a waiver of error and will not result in reversal unless the remark is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

We reject Aaron Carper's claim of prosecutorial misconduct. We previously quoted the portion of the summation, about which Carper complains. We question whether the State argued to the jury that the jury should assess the value of stolen property possessed under count one by including the value of expensive construction tools never located. The State focused, particularly in its rebuttal, on the value of the property found and reviewed by Joseph Neuman and Eric Pierce at the sheriff's impound yard and the South Perry residence. Although Pierce estimated the value of the recovered objects to be $700, Neuman testified that the aggregate value was between $1,000 and $1,400, well over the $750 minimum value required in the charge. Defense counsel effectively argued to the jury that it should only consider the value of property recovered. Regardless, the jury could have found from inferences that, since Carper possessed some of the objects once stored in Neuman's Continental trailer, he may have also possessed

some of the chattels inside the trailer that law enforcement never recovered. Carper did

not seek a ruling before the trial court that insufficient evidence supported a jury finding

that Carper possessed Neuman's and Pierce's missing construction tools never recovered.

Carper does not argue insufficiency of the evidence before this reviewing court.

*Petrich* Instruction

Aaron Carper contends, for the first time on appeal, that the trial court should have

instructed the jury that it must unanimously agree on which underlying act of possession

gave rise to criminal liability for count one. A defective verdict that deprives the

defendant of a unanimous verdict invades the fundamental constitutional right to a trial

by jury. *State v. Fitzgerald*, 39 Wn. App. 652, 655, 694 P.2d 1117 (1985). A defendant

may, therefore, raise this assignment of error for the first time on appeal. *State v.*

*Fitzgerald*, 39 Wn. App. at 655. When an error occurs in a unanimity instruction, we will

uphold a trial verdict only if the State shows the error to be harmless beyond a reasonable

doubt. *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990).

The Washington Constitution gives criminal defendants the right to a unanimous

jury verdict. WASH. CONST. art. I, § 21. When the State presents evidence of multiple

criminal acts and any one of these acts could constitute the crime charged, the jury must

unanimously agree on the same act that constitutes the crime in order to convict the

defendant. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). To ensure jury

unanimity in "multiple acts" cases, either the State must elect one particular criminal act

17

upon which to base a conviction, or the trial court must instruct the jury that all jurors must agree that the State proved the same underlying criminal act beyond a reasonable doubt. *State v. Petrich*, 101 Wn.2d at 572. A unanimity instruction is required when evidence that the charged conduct occurred at different times and places tends to show that several distinct acts occurred. *State v. Brown*, 159 Wn. App. 1, 14, 248 P.3d 518 (2010); *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). Constitutional error occurs if the State fails to identify one act as the alleged crime and the trial court omits a unanimity instruction. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). The constitutional error stems from the possibility that some jurors may rely on one act as the basis for convicting the defendant and other jurors may depend on a different act, with a resulting lack of unanimity on all of the elements necessary for a valid conviction. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988).

Aaron Carper assigns error to the State's purported presentation of multiple acts constituting possession of stolen property under count one without the trial court delivering a unanimity instruction. Carper argues the State of Washington's evidence delineated separate acts: possession of those tools and construction supplies owned by Joseph Neuman and Eric Pierce recovered by law enforcement and possession of those construction tools once stored in Joseph Neuman's Continental trailer and never recovered by law enforcement. On appeal, the State responds that it never argued to the jury that Aaron Carper should be convicted of possessing the construction tools never

18

found.  We disagree with Carper and refuse to characterize the crime as charged in count one as differing acts.

Count one charged second degree possession of stolen property for tools and construction materials.  Assuming Carper possessed the construction tools never recovered, he could have or likely would have possessed the unrecovered tools and the recovered tools at the same time, if not the same place, because the tools were originally placed in one location, Joseph Neuman's Continental trailer.  Joseph Neuman and Eric Pierce remain the victims of the crime regardless of whether the charge stems solely from the chattels recovered or includes the chattels never found.  Count one limited the possession charge to possession during the time frame of March 8 to March 10, 2016.  Assuming Carper possessed the missing construction tools of Neuman and Pierce at a date before March 8, the jury would have, under the jury instructions, needed to absolve Carper of the crime to the extent Carper possessed the tools never recovered.  As previously indicated, Carper never asked the trial court for a ruling as a matter of law that the jury could not find him responsible for possessing the tools never located.  Assuming the State is correct that it never argued Carper could be convicted based on the tools never reclaimed, additional reasons lie behind rejecting Carper's contention.

We deem *State v. McReynolds*, 117 Wn. App. 309, 71 P.3d 663 (2003) controlling.  In *McReynolds*, the trial court convicted a husband and wife of multiple counts of first and second degree possession of stolen property.  The State charged multiple counts

19

based on different property stolen and various victims of theft. The court acknowledged that separate, discrete possessions could constitute separate units of prosecution. Nevertheless, since the State charged the McReynoldses with continuous possession of various property during a period of fifteen days, the court found the unit of prosecution was a single possession. Despite the property being owned by different persons, the court found the possession of that property was only one crime. The court reversed the separate convictions on double jeopardy grounds and remanded with the dictate that, "[i]f the State chooses to retry the McReynoldses as charged in the informations, each may be convicted of only one count of possession of stolen property." *State v. McReynolds*, 117 Wn. App. at 344.

Although *McReynolds* addressed a double jeopardy violation, its analysis addresses Aaron Carper's argument that the State of Washington presented evidence of multiple acts. The State charged Carper with continuous possession of stolen property over a three day period. As a result, even if Carper possessed various objects of stolen property, the possession of those items constitutes one single act and one unit of prosecution. The State did not present evidence that the charged conduct occurred at different times such that would support a showing of several distinct acts. The trial court did not infringe on Aaron Carper's constitutional right to a unanimous jury verdict.

Use of Motor Vehicle

Washington's license revocation statute, RCW 46.20.285(4), mandates that the

20

Department of Licensing revoke a driver's license for one year when the driver has been

convicted of "[a]ny felony in the commission of which a motor vehicle *is used*."

(Emphasis added.)  The statute does not define "used," but case law interprets the word in

this context to mean "employed in accomplishing something."  *State v. Hearn*, 131 Wn.

App. 601, 609-10, 128 P.3d 139 (2006).  In other words, the vehicle must be an

instrumentality of the crime, such that the offender uses it in some fashion to commit the

crime.  *State v. B.E.K.*, 141 Wn. App. 742, 748, 172 P.3d 365 (2007).  We review the

application of a statute to a specific set of facts de novo.  *State v. Dupuis*, 168 Wn. App.

672, 674, 278 P.3d 683 (2012).

Aaron Carper argues the stolen motorcycle does not constitute an instrumentality

of the crime on which the jury convicted him.  Carper argues the motorcycle comprises

the object of the crime since the State charged him with possession, not theft.

The State of Washington emphasizes *State v. Contreras*, 162 Wn. App. 540, 254

P.3d 214 (2011), wherein this court rejected the same argument advanced by Aaron

Carper.  Nevertheless, *Contreras* factually differs from Carper's appeal.  Even though the

State charged Francisco Contreras with possession of a stolen motor vehicle, and not

theft, this court refused to view the vehicle as merely an object of the crime when

Contreras used the vehicle.  Contreras drove the stolen vehicle for three years and

attempted to relicense it with false vehicle identification number tags.  Contreras'

assertion of ownership and possession satisfied the "use" element of RCW 46.20.285.

21

Other decisions illustrate when an offender "uses" a motor vehicle in the commission of a felony for purposes of RCW 46.20.285. In *State v. Batten*, 140 Wn.2d 362, 363, 997 P.2d 350 (2000), the trial court convicted James Batten of unlawful possession of a firearm and possession of a controlled substance. Because Batten used his car to conceal the firearm and to transport the controlled substance, the state high court held he "used" his car in the commission of a felony. In *State v. Dupuis*, 168 Wn. App. 672 (2012), this court held the defendant "used" a car while committing the offense of second degree taking or riding in a motor vehicle without the owner's permission. In *State v. Griffin*, 126 Wn. App. 700, 708, 109 P.3d 870 (2005), the Court of Appeals found a sufficient connection between the car and the crime when the defendant received cocaine in exchange for a ride in his car. This court also found use of a vehicle in *State v. Dykstra*, 127 Wn. App. 1, 110 P.3d 758 (2005), when the defendant and his accomplices to an auto theft ring drove around looking for cars to steal, drove stolen cars, posted someone in a lookout car during a theft, and drove away unwanted engine parts after disassembly.

In *State v. Alcantar-Maldonado*, 184 Wn. App. 215, 340 P.3d 859 (2014), this court found RCW 46.20.285 unsatisfied when Bonifacio Alcantar-Maldonado used a car to transport himself to the locus of an assault. Because he could have used other means to arrive at the location, such as a bus or a bike, this court found the commission of the felony did not entail operation of a motor vehicle.

Aaron Carper simply possessed a stolen motorcycle. No evidence established that Carper ever used or rode the motorcycle. To the contrary, law enforcement found the motorcycle with a removed ignition and exposed wires. One witness testified that Carper claimed ownership of the motorcycle. This fleeting statement does not rise to the evidence, in *State v. Contreras*, that Francisco Contreras claimed ownership when attempting to relicense the stolen vehicle.

The State of Washington further contends that Aaron Carper manifested his use and intended dominion and control over the motorcycle through secreting it and performing work on it. But, weak evidence supports that Carper worked on the motorcycle. The only witness who claimed to have seen Carper perform repairs could not accurately testify as to the color of the motorcycle repaired by Carper. In contrast, another witness who could accurately identify the color of the motorcycle claimed that someone else worked on the motorcycle. Instead, he recounted that the first witness's boyfriend and an unnamed individual worked on the motorcycle. Even if Carper worked on the motorcycle, the testimony does not show the nature of the work, whether he completed any work, or whether he rendered the motorcycle operable. Any work may have only stylized the looks of the motorcycle. The performance of any work on the motorcycle lends support to the conclusion that the cycle is the mere object of the crime, not an instrumentality of some other crime.

Because the State presented no evidence of use, let alone a nexus between use and

23

No. 34834-2-III
*State v. Carper*

possession of the motorcycle, RCW 46.20.285(4) does not apply to Aaron Carper. We therefore direct the trial court to vacate the mandatory license suspension.

## CONCLUSION

We affirm Aaron Carper's three convictions for possession of stolen property. We reverse the trial court's order suspending Carper's driver's license. We remand for vacation of the suspension order.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.

24