IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  36027-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID TLUNG ZA THANG, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — David Thang appeals his convictions for multiple counts of

identity theft, forgery, and possession of stolen property.  He assigns error to a jury

instruction, an evidentiary ruling, the trial court's imposition of discretionary legal

financial obligations (LFOs), and its finding that he used a motor vehicle to commit the

felonies.  We affirm the convictions but remand with directions to the trial court to strike

the discretionary LFOs and the use of a motor vehicle finding from Mr. Thang's

judgment and sentence.

## FACTS AND PROCEDURAL BACKGROUND

In October 2017, David Barragan stole five checks from the mailbox of his

neighbor, Robert Clements. Mr. Barragan altered the stolen checks to make them

payable to himself, and increased the value of two checks. He asked his college

roommate, David Thang, to cash the checks for him, explaining that he did not have a

bank account in Washington State.

Mr. Thang was willing, and over the period of a week used the drive-up ATM[1] at

his bank to deposit four of the checks. After depositing the checks, Mr. Thang would

immediately withdraw their value or the $500 maximum daily allowance for ATM

withdrawals and turn the funds over to Mr. Barragan.

Within a week of Mr. Thang depositing and withdrawing funds from the first

check, his bank was notified that one of the checks appeared to be altered and had a

flawed endorsement. Mr. Thang's bank responded by putting a hold on his account and

later by withdrawing the full amount of the apparently altered or forged checks from Mr.

Thang's account, in order to restore the funds to Mr. Clements.

---

[1] Automatic teller machine.

Mr. Barragan originally claimed that he received the checks for work he had done, but later admitted that he had taken them from Mr. Clements's mailbox. He agreed to plead guilty to criminal charges.

Mr. Thang was charged with four counts of second degree identity theft, four counts of forgery, two counts of second degree possession of stolen property, and two counts of third degree possession of stolen property.

During Mr. Thang's two-day jury trial, one of the State's witnesses was Deputy Nicholas English, who had conducted a recorded interview of Mr. Thang. In the course of direct examination, the prosecutor asked the deputy about some of the statements Mr. Thang had made when interviewed. When given the opportunity to cross-examine the deputy, Mr. Thang's defense counsel ran into objections from the prosecutor when he asked the deputy about statements made by his client that would be helpful to the defense. Defense counsel then requested the opportunity to play the entire recording for the jury.

Outside the presence of the jury, the trial court heard argument from defense counsel, who expressed frustration that the State had not provided a transcript of the recorded interview or played it for the jury. The trial court had previously granted a State motion in limine prohibiting defense counsel from "eliciting from witnesses hearsay statements of his client." Clerk's Papers (CP) at 25. Defense counsel had not objected to the motion in limine when it was ruled on before trial, but now argued that it was unfair.

3

The following is as clear an explanation as defense counsel offered of why he should be allowed to play the recorded interview:

> I feel the State's hiding evidence or trying to hide evidence and they're trying to eliminate—eliminate the evidence that is in favor of my client by their allowing to ask hearsay questions and I'm not allowed to do the same thing based on the statements which seems, I think—if in the judicial realm, it seems to me not to be proper to allow one party to do that and not the other party.
>
> We have a recording. I don't have a transcript, or I would show him the transcript and go over that with him. That's not been provided to me like it normally is. So I think the recording is the best way, and we do have—and I think we should play that, your Honor, so that this jury has a full view of the evidence.

Report of Proceedings (RP)[2] at 76. The prosecutor responded that the State did not intend to play the recorded interview, which it characterized as "multiple layers of hearsay," and asserted that the hearsay exception for admissions by a party opponent provided by ER 801(d)(2) *intentionally* operates on a one-way basis. *Id.* at 76-77.

After recessing and reviewing case law the State had cited in support of its motion in limine, the trial court sustained the State's objection to playing the recording.

The trial court's instructions to the jury included the Washington pattern jury instruction on accomplice liability. Mr. Thang raised no objection to any of the court's instructions. In closing argument, the prosecutor argued that while Mr. Thang was not the mastermind of the crimes, he was guilty as an accomplice. He identified evidence

---

[2] All references to the report of proceedings are to the verbatim report of the trial proceedings.

from which he argued jurors could infer that Mr. Thang was aware that the checks were not legitimate: their apparent alterations, their unexplained drawer (Clements Farms, Inc.), the fact that the first check was made payable to Verizon, and the fact that Mr. Barragan had never needed Mr. Thang to cash checks he received from work study or financial aid—only these four checks from Clements Farms, all of which he asked to be cashed over a period of about a week.

The jury found Mr. Thang guilty as charged. The trial court imposed a first-time offender waiver and sentenced Mr. Thang to 120 days' confinement. Mr. Thang appeals.

ANALYSIS

Mr. Thang makes four assignments of error, one of which—a challenge to the imposition of discretionary LFOs—the State concedes, in light of *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018) (holding that LFO relief enacted in 2018 applies prospectively to cases on direct appeal). We will remand with instructions to strike the discretionary LFOs. We address the remaining errors in the order presented by Mr. Thang.

I. INSTRUCTIONAL ERROR

Mr. Thang's first assignment of error is to the elements instructions for the second degree identity theft charges, which he contends diminished the State's burden of proof. The State's threshold response is that Mr. Thang raised no objection to the instruction in

No. 36027-0-III
*State v. Thang*

the trial court, so any error was not preserved.  *See* RAP 2.5(a).  The State is correct, but

the challenge is a simple one to address and reject, so we exercise our discretion to

review it.

The trial court's elements instructions for the second degree identity theft charges

were based on the Washington Pattern jury instruction.  Its instruction 15, for the crime

charged in count I is representative, and provided the following statement of the

elements:

> To convict the defendant of the crime of Identity Theft in the Second Degree as charged in Count I of the information, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> 1. That on or about the 11th day of October, 2017, the defendant knowingly obtained, possessed, or transferred or used a means of identification or financial information of another person, living or dead;
>
> 2. That the defendant did so with the intent to commit or aid or abet any crime;
>
> 3. That the defendant knew that the means of identification or financial information belonged to another person; and
>
> 4. That the acts occurred in the State of Washington.

CP at 50; *see* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY

INSTRUCTIONS: CRIMINAL 131.06, at 616 (4th ed. 2016).

The trial court's instructions conform to RCW 9.35.020(1) and (3), which define

the elements of identity theft in the second degree.  Subsection (1) of the statute makes it

a crime to "knowingly obtain, possess, use, or transfer a means of identification or

6

financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime." Subsection (2) of the statute limits first degree identity theft to situations involving the obtaining of something of value in excess of $1,500 or where the accused knowingly targets a senior or vulnerable individual. Subsection (3) provides that a person is guilty of second degree identity theft if he or she violates subsection (1) of the statute under circumstances not amounting to first degree identity theft.

Mr. Thang argues that the instruction was in error because the State relied on accomplice liability under RCW 9A.08.020(3)(a), which provides that "[a] person is an accomplice of another person in the commission of a crime if: (a) With knowledge that it will promote or facilitate the commission of *the* crime, he or she: (i) Solicits, commands, encourages, or requests such other person to commit it; or (ii) Aids or agrees to aid such other person in planning or committing it." (Emphasis added.) He contrasts RCW 9A.08.020(3)(a)'s requirement that the accomplice know he or she is facilitating "*the* crime" with instruction 15's reference to obtaining, possessing, transferring or using another person's identification or financial information with the intent to commit or aid or abet "*any* crime."

Mr. Thang's error is in conflating what the legislature has provided amounts to identity theft with what it has required to establish accomplice liability. "It is the job of the legislature to define crimes." *State v. Pinkham*, 2 Wn. App. 2d 411, 414, 409 P.3d 1103, *review denied*, 190 Wn.2d 1027, 421 P.3d 455 (2018). The legislature chose to

7

make it an element of identity theft that the accused acted with the intent to commit or aid

or abet "any" crime. It chose to impose liability as an accomplice only where the

accomplice acts with knowledge that his or her actions will promote or facilitate the

commission of "the" crime. Mr. Thang's jury was properly instructed on that different

requirement.[3] RCW 9A.08.020(3)(a).

Read together, the instructions told the jury that to be guilty of second degree

identity theft, Mr. Thang must have had knowledge that his actions would promote or

facilitate the commission of identity theft, which itself required proof that obtaining,

possessing, transferring or using another person's identification or financial information

was with the intent of committing or aiding or abetting any crime. There was no error in

the instructions.

II.     REFUSING REQUEST TO PLAY RECORDED INTERVIEW

Mr. Thang next argues that the trial court erred in sustaining the State's objection

to his request that his entire recorded interview be played, after the State elicited some of

---

[3] Instruction 9 provided in relevant part:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
> (1) solicits, commands, encourages, or requests another person to commit *the* crime; or
> (2) aids or agrees to aid another person in planning or committing *the* crime.

CP at 44 (emphasis added).

Mr. Thang's statements in its direct examination of Deputy English. For the first time on appeal, he argues that the entire interview was admissible under the rule of completeness provided by ER 106. That rule states:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it.

Mr. Thang argues that "[a]lthough defense counsel did not cite ER 106 on the fly during the trial, his argument . . . [was] adequate to alert the court to the basis for [his] argument." Appellant's Br. at 12. Setting aside whether the rule even applies where the State did not offer any part of the recording but only questioned Deputy English, the objection was not adequate. Not only was ER 106 not cited, but there was no reference to the rule of completeness. Based on the trial court's ruling, it clearly understood that it was being asked to rule only on the State's hearsay objection.[4]

---

[4] In sustaining the objection, the trial court said, "I think *State v. Finch* is on point . . . and also . . . Tegland Section 801:16 on the 2017/2018 Handbook." RP at 80. The latter was a clear reference to 5D Karl D. Tegland, *Washington Practice: Courtroom Handbook on Washington Evidence* (2017-2018 ed.). Section 801:16, which deals with admissions by a party-opponent, includes the following discussion:

> Statements by a party are admissible only when offered *against* that party. The rule does not allow a party to introduce his or her own out-of-court statements through the testimony of other witnesses. If the rule were otherwise, a party could simply tell his or her story out of court, and then present it through the testimony of other witnesses without taking an oath and without facing cross-examination. *State v. Finch*, 137 [Wn.]2d 792,

9

Had defense counsel cited ER 106, his challenge on appeal would still fail because he made no offer of proof. The rule does not say that if part of a recorded statement is offered by one party, the remainder is automatically admissible on the request of the other party. Admissibility turns on whether some other part of the recording "ought in fairness to be considered contemporaneously." Some showing must be made of what else should be admitted and why. Defense counsel did not ask the trial court to listen to the 20 minute recorded statement or excerpts from it, nor did he provide any other offer of proof enabling the trial court to make a ruling.

For both reasons, any argument based on ER 106 was not preserved.

III.    "USE OF A MOTOR VEHICLE" FINDING

Finally, Mr. Thang argues the trial court erred when it included a finding in the judgment and sentence that he used a motor vehicle during the commission of the crimes. Under RCW 46.20.285, the Washington Department of Licensing "shall revoke the license of any driver for the period of one calendar year" for "[a]ny felony in the commission of which a motor vehicle is used." RCW 46.20.285(4).

The statute does not define "used" but Washington courts have interpreted the word in this context to mean "'employed in accomplishing something.'" *State v. Batten*,

---

975 P.2d 967 (1999) (defendant not allowed to call witness to recount exculpatory out-of-court statement by defendant).

5D TEGLAND, *supra*, at 385.

95 Wn. App. 127, 129, 974 P.2d 879 (1999), *aff'd*, 140 Wn.2d 362, 997 P.2d 350 (2000) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2524 (3d ed. 1966)). The Washington Supreme Court has "affirmed the relevant test for 'use' as whether the felony has some reasonable relation to the operation of a motor vehicle, or whether the use of the motor vehicle contributes in some reasonable degree to the commission of the felony." *State v. B.E.K.*, 141 Wn. App. 742, 746, 172 P.3d 365 (2007) (emphasis added). There must be a relationship between the vehicle and the commission or accomplishment of the crime. *State v. Alcantar-Maldonado*, 184 Wn. App. 215, 228, 340 P.3d 859 (2014). A vehicle is not used in the commission of a crime where it was incidental to the commission of the crime. *Id.* We review the statute's application to a specific set of facts de novo. *State v. Dupuis*, 168 Wn. App. 672, 674, 278 P.3d 683 (2012).

There was no discussion at sentencing about whether the finding should be made in Mr. Thang's case. Evidence was offered during trial that Mr. Thang had deposited the four checks at a drive-up ATM; at issue is whether the forgery, identity theft, and possession of stolen property charged had some reasonable, nonincidental relationship to Mr. Thang's operation of his car.

We find this case to be similar to *Alcantar-Maldonado*, in which this court found that for the defendant to use his vehicle solely to transport himself to and from the location of an assault was not a sufficient nexus. 184 Wn. App. at 229-30. The

11

defendant had not used his vehicle to assault the victim, he did not assault the victim inside the vehicle, and the vehicle was not the subject of the crime charged. *Id.* at 230. The vehicle's use was merely incidental, for transportation. *Id.* at 229-30; *see also State v. Hearn*, 131 Wn. App. 601, 610-11, 128 P.3d 139 (2006) (holding that drugs found in a purse and basket inside a vehicle did not qualify as "use" of a vehicle because the vehicle was not used to conceal the drugs); *State v. Wayne*, 134 Wn. App. 873, 875-76, 142 P.3d 1125 (2006) (holding that there was no reasonable connection between drugs found in the defendant's pocket and the operation of his vehicle).

The State argues on appeal that Mr. Thang made a "calculated decision to commit his crimes by using the drive-up ATM," Br. of Resp't at 28, but it offers no evidence that for Mr. Thang to *use his car*, as distinguished from using an ATM, was calculated. Using an ATM contributed to the commission of the felonies, since there was evidence that the checks' alterations would have been apparent to a teller. But there was no evidence that the bank did not have walk-up ATMs that could have been used, and even drive-up ATMs can be used by bank customers who are traveling on foot or by bicycle. The State argues that "[s]eeing a person using a drive-up ATM on foot or on a bicycle could have easily aroused suspicion and a 9-1-1 call," Br. of Resp't at 30, but it points to no supporting evidence. We will not rely on the State's speculation to find that Mr. Thang's use of his car was more than incidental.

12

No. 36027-0-III
*State v. Thang*

We affirm the convictions and remand with instructions to strike the discretionary LFOs (the criminal filing fee, court-appointed attorney fee, and jury demand fee) and the use of a motor vehicle finding.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

13